2010 Ark. 55

**Christopher W. ROBERTS, Appellant,**

v.

**Robin Yanyan YANG (Formerly Roberts), Appellee.**

No. 08–52.

Supreme Court of Arkansas.

Feb. 4, 2010.

James L. Tripcony, Little Rock, for appellant.

Christopher Roberts, pro se.

Barry Coplin, Jocelyn A. Stotts, Little Rock, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

This case is the second appeal originating from the divorce proceedings involving appellant Christopher Roberts and appellee Robin Yang. The supreme court accepted certification of the case from the court of appeals under Ark. Sup.Ct. R. 1–2(a)(7), because it was a subsequent appeal to a case then pending in this court.

Roberts and Yang were divorced by decree on July 2, 2007. The divorce decree included the following findings:

2. The matters stated in the plaintiff's Second Amended Complaint have been established by her testimony, and she is hereby granted an absolute divorce from the defendant on grounds of eighteen months continued separation without cohabitation. The parties were married on August 23, 1997 and they have been separated since on or before December 2, 2005. The plaintiff's witness, Kaye Lundgren, verified the plaintiff's residence in this county and state for the requisite periods of time, and her separation from the defendant for more than eighteen months.

. . . .

4. The parties' financial accounts and investments listed on Plaintiff's Exhibit 5 shall be valued as of June 4, 2007 and divided equally between the parties in kind or by equalizing the values of the accounts and investments.

5. The parties' retirement funds listed on Plaintiff's Exhibit 5 shall be valued as of June 4, 2007 and divided equally between the parties in kind or by equalizing the values of the funds; except, the defendant's APERS pension plan is not vested and is not subject to division.[1]

. . . .

7. The parties' jointly owned real property including their marital residence . . . shall be listed for sale forthwith by a realtor chosen by mutual agreement of the parties. The parties shall follow the realtor's recommendations regarding the listing price and the terms of the sale. The net proceeds of the sale, after payment of realtor's fees and closing costs, shall be divided equally between the parties. Each party shall pay one-half of the costs of any repairs which are necessary to market the property.

---

1. The trial court admitted Yang's Plaintiff's Exhibit 5—entitled "Marital Assets"—without objection at the parties' June 4, 2007 divorce trial. The exhibit lists the parties' financial and retirement accounts, along with their values at various dates.

Roberts appealed from the divorce decree to the court of appeals. In his first point for reversal, Roberts argued that the trial court lacked jurisdiction to enter the decree because Yang failed to meet and prove Arkansas residency requirements. Second, he argued that the trial court erred under Ark.Code Ann. § 9–12–315(a)(3)(B) (Repl.2008), by ordering that the marital home be sold privately by a realtor. The court of appeals affirmed the divorce decree in *Roberts v. Yang*, 102 Ark.App. 384, 285 S.W.3d 689 (2008). After granting Roberts's petition for review, this court also affirmed the divorce decree, holding that (1) Yang met and proved Arkansas residency requirements preceding the final judgment of divorce; and (2) Roberts failed to preserve his argument concerning the sale of the marital home for appellate review. *Roberts v. Roberts*, 2009 Ark. 567, 349 S.W.3d 886.

After Roberts filed his notice of appeal from the divorce decree and while that appeal was still pending, Yang filed a motion for contempt on October 1, 2007, asserting that Roberts "willfully failed and refused to cooperate" with the division of the parties' accounts and real property as ordered by the trial court in the divorce decree. The trial court filed a show cause order on October 1, 2007; the hearing on Yang's contempt motion was held on October 15, 2007. Roberts filed a response the same day of the contempt hearing, denying his failure to cooperate in the division of the accounts and stating in part that

> [o]nce the Plaintiff stops withholding information and discloses the sale price of our company[ ], the figures in the draft Plaintiff's Exhibit 5, copies of her tax returns, all business e-mails since November 2005, and all other documents

previously requested, then a figure may be estimated.

Roberts appeared pro se at the hearing. When asked by Yang's counsel what steps he had taken to implement the requirements of the divorce decree, Roberts stated that he "requested a copy of Plaintiff's Exhibit 5 so that it could be corrected, which I have not received until just now." The trial judge, however, took judicial notice that Plaintiff's Exhibit 5—listing the parties' accounts and assets—was the same Plaintiff's Exhibit 5 that Yang previously introduced in the original divorce trial.

On October 16, 2007, the day after the hearing, the trial court addressed Yang's contempt motion in its second order. The order stated that the trial court would "withhold a finding of contempt and imposition of sanctions against [Roberts] pending his compliance with the terms of this order," and divided the parties' accounts as follows:

> 2. The values of the parties' bank accounts and investments listed on Plaintiff's Exhibit 5 shall be equalized and divided forthwith by [Yang] paying to [Roberts] the cash sum of $16,760.98. Each party shall retain the accounts and investments in their respective names, and [Roberts] shall retain the parties' EE and I series savings bonds.

> 3. The values of the parties' retirement funds listed on Plaintiff's Exhibit 5 shall be equalized and divided forthwith by [Roberts] transferring from his rollover IRA or ROTH IRA to an IRA designated by [Yang] the amount of $9,284.67. Each party shall retain the retirement accounts in their respective names.[2]

---

**2.** These amounts reflect the trial court's equalization of the figures listed in Plaintiff's Exhibit 5.

Roberts filed a notice of appeal from the trial court's ruling on Yang's contempt motion on November 24, 2007. Because of deficiencies in Roberts's abstract and addendum, the court of appeals ordered rebriefing. Upon resubmission, the court of appeals held the case pending our resolution of Roberts's first appeal. This court subsequently accepted certification of this case under Ark. Sup.Ct. R. 1–2(a)(7), which provides that the supreme court has jurisdiction over "[s]econd or subsequent appeals following an appeal which has been decided in the Supreme Court."

Roberts brings one point on appeal, arguing that the trial court erred in its October 16, 2007 order by "dividing and distributing the parties' assets without determining their value as of the time of the divorce decree." Divorce cases are reviewed de novo by the appellate court. *Farrell v. Farrell,* 365 Ark. 465, 231 S.W.3d 619 (2006). With respect to the division of property, the trial court's findings of fact will be affirmed unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed and the same standard applies. *Id.* A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* In order to demonstrate that the trial court's ruling was erroneous, the appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.* The appellate court gives due deference to the chancellor's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.*

Roberts specifically argues that Ark. Code Ann. § 9–12–315(a) requires that marital property be divided at the time a divorce is granted; therefore, the trial court erred in its October 16, 2007 order when it "changed it[s] course and divided the parties' accounts and funds based on values as of dates other than June 4, 2007," the date of the divorce trial. In response, Yang asserts that (1) Roberts raises this issue for the first time on appeal, because he failed to argue at the divorce trial or at the contempt hearing that the parties' accounts should be divided at the time a divorce decree is entered; (2) the law of the case doctrine bars consideration of this appeal, because the first appeal was conclusive to every question of law or fact that was decided or could have been decided, but was not presented in the first appeal; (3) the accounts were equally divided based on values presented by Yang in Plaintiff's Exhibit 5 and Roberts failed to present any alternative values of the accounts; (4) Roberts has not demonstrated that he was prejudiced by the trial court's October 16, 2007 order.

We agree that Roberts raises for the first time his argument that the trial court erred by failing to value and divide the accounts at issue at the time of the divorce decree as required by Ark.Code Ann. § 9–12–315. We therefore affirm the trial court's second order.

At the October 15, 2007 contempt hearing, Roberts testified only that Plaintiff's Exhibit 5 failed to show "all assets," and that the "numbers on Plaintiff's [Exhibit] 5 are not right." During cross-examination at the June divorce trial, Roberts testified that there were a "few errors" on Plaintiff's Exhibit 5, claiming it erroneously listed his nonvested pension at his current salary; failed to separately list EE and I series savings bonds and show the bonds' liquidated values; and inflated the value of the marital home. Thus, at both the divorce trial and the contempt hearing, Roberts failed to specifically challenge the *valuation dates* of

the parties' accounts. In Roberts's first appeal, this court stated that "it is incumbent upon the parties to raise arguments initially to the circuit court and to give that court an opportunity to consider them.... Otherwise, we would be placed in the position of reversing a circuit court for reasons not addressed by that court." *Roberts v. Roberts,* 2009 Ark. 567, at 8, 349 S.W.3d 886, 891. Accordingly, Roberts failed to preserve his argument for appellate review.

Further, Roberts did not introduce any evidence of his own on which the trial court might have based a valuation. Roberts asserts that he provided an alternative accounting or valuation of the parties' accounts via a letter he mailed to the trial judge that included his "Amended Draft Plaintiff's Exhibit 5–Assets Only." This letter was apparently received by the trial court a week after the "Second Order" was filed, thus the trial court never had an opportunity to rule on it. Additionally, Roberts mailed a *letter,* not a motion, nor can it be construed as a motion. Simply stated, Roberts had multiple opportunities to make specific objections to the valuation dates of the parties' accounts, or present his alternative, amended Plaintiff's Exhibit 5 to the trial court: at the original divorce trial, in his response to Yang's motion for contempt, and at the contempt hearing. As this court stated in *Jones v. Jones,* 320 Ark. 449, 453, 898 S.W.2d 23, 25 (1995), "*De novo* review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized."

Affirmed.