2010 Ark. 190

**Linda LAMONTAGNE, Appellant,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and S.S., Appellees.**

**No. 09–859.**

Supreme Court of Arkansas.

April 22, 2010.

Leah Lanford, Little Rock, for appellant.

Tabitha B. McNulty, Office of Chief Counsel, Little Rock, and Chrestman Group, PLLC, by: Keith L. Chrestman, Jonesboro, for appellees.

RONALD L. SHEFFIELD, Associate Justice.

The Arkansas Court of Appeals certified this case to this court as an issue in which there is a perceived inconsistency in the decisions of the supreme court, an issue of substantial public interest, and a significant issue needing clarification or development of the law or overruling of precedent. Thus, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(b)(2), (4), and (5) (2009).

Appellant Linda Lamontagne appeals the decision of the Washington County Circuit Court awarding custody of her daughter, S.S., to her other daughter, Danielle Sexton. On appeal Lamontagne asserts that the trial court erred in granting permanent custody of the minor child to the child's sister under a previous version of Ark.Code Ann. § 9–27–338 (Repl.2009), rather than the amended version, changes to which had become effective on April 6, 2009. The effective date was two days prior to the permanency planning hearing and resulting order, wherein the court found that Lamontagne had made significant progress but was not ready to take immediate custody. Lamontagne appeals from this order.

On January 15, 2008, Linda Lamontagne, while intoxicated, crashed the vehicle in which she and S.S. were riding. Four-year-old S.S. was hospitalized for her injuries. The Arkansas Department of Human Services (DHS) took the child into emergency custody. S.S. was found to be dependent-neglected by the circuit court pursuant to an order entered March 18, 2008, and ordered to remain in the custody of DHS with a case goal of reunification with the parent. The child was placed in the temporary custody of Tim and Danielle Sexton, S.S's sister and brother-in-law. The court also ordered Lamontagne to undergo both psychiatric and psychological evaluation. At a permanency planning hearing on January 7, 2009, the circuit court judge found that Lamontagne was making significant progress and working toward the goal of reunification. The court also found that reunification would likely occur within six months of the hearing as long as Lamontagne was in frequent, consistent individual counseling and sought treatment by a psychiatrist. The court ordered the child to remain in the temporary custody of the Sextons.

At the fifteen-month permanency planning hearing, on April 8, 2009, the circuit court ceased reunification services and found, based on Ark.Code Ann. § 9–27–338, that it was in the best interest of the child to award permanent custody to the Sextons and allow Lamontagne visitation on Saturdays. The court allowed for a reopening of the case in the future if Lamontagne could show that she had made progress with regard to maintaining her psychiatric medication and had entered counseling with the family. Lamontagne appeals the circuit court's decision.

On appeal, Lamontagne argues that the trial court erred in awarding permanent custody to the child's sister. Lamontagne contends that the trial court should have continued efforts to award custody to her based on the amended statute Ark.Code Ann. § 9–27–338 (Repl.2009). Lamontagne asserts that the trial court, however, relied on the previous statute and found that, based on the order of preference, custody was awarded to S.S.'s sister. Lamontagne argues that if the trial court had followed the amended statute, the preferred goal would have been to continue reunification efforts with the child and

mother rather than to award permanent custodial placement with the sister. DHS counters that, assuming the trial court erred in awarding custody, Lamontagne did not preserve the point on appeal by properly raising the issue during the hearing. DHS argues that Lamontagne was required to object and raise the issue at the trial court level. Because Lamontagne did not, DHS contends that she is barred from raising the point for the first time on appeal.

■ This case was certified to this court to address a perceived inconsistency in prior case law regarding arguments raised for the first time on appeal. Although we have held in the past that we will not consider arguments raised for the first time on appeal, in *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000), we held that a contemporaneous objection was not required to obtain review on appeal. This court stated that de novo review of chancery court decisions had no such requirements. We are asked to review the *Jones* decision in view of our other holdings on this issue.

■ We have stated before that this court reviews findings in dependency-neglect proceedings de novo, but we will not reverse the trial judge's findings "unless they are clearly erroneous." *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. Furthermore, this court defers to the trial judge's evaluation of the credibility of witnesses. *Crawford v. Ark. Dep't of Human Servs.*, 330 Ark. 152, 951 S.W.2d 310 (1997). With regard to arguments raised for the first time on appeal, we have stated that "*[d]e novo* review does not mean that this court can

entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." *Roberts v. Yang*, 2010 Ark. 55, —— S.W.3d ——, 2010 WL 398641.

As a threshold matter, we address a prior holding by this court in *Jones v. Abraham*, in which we held that the requirement for a contemporaneous objection was not applicable to deny appellate review of a dismissal. The *Jones* case involved a contest to a will by parties claiming that the decedent made an oral agreement to transfer her share of her father's estate to her sister, and her sister's heirs. The lower court granted a motion for a directed verdict. Originally, the matter was appealed to the court of appeals, which affirmed, citing to the "contemporaneous-objection rule" as a ground for denying appellate review of the court's order of dismissal. *See Jones v. Abraham*, 67 Ark.App. 304, 999 S.W.2d 698 (1999). On granting petition for review, this court stated that the court of appeals decision was in conflict with *Morrow v. Morrow*, 270 Ark. 31, 603 S.W.2d 431 (Ark. App.1980). In *Morrow*, the appellee claimed that the appellant failed to raise an issue at trial and, thus, the court of appeals could not consider it on appeal. The court of appeals rejected the appellee's assertion and stated that "[t]raditionally appeals from the chancery court are reviewed de novo and there is no requirement of objections to the findings, conclusions and decree of the court to obtain review on appeal." *Id.* at 33, 603 S.W.2d at 432. The *Jones* court cited to this decision in holding that the lack of a contemporaneous objection did not deny appellate review of the case. The *Morrow* opinion, however, did not cite to any authority to support its conclusion.

The *Jones* decision has been cited in other cases. *See, e.g., Abernathy v.*

*Adous,* 85 Ark.App. 242, 149 S.W.3d 884 (2004); *Martin v. Martin,* 79 Ark.App. 309, 87 S.W.3d 817 (2002). In *Dansby v. Dansby,* 87 Ark.App. 156, 189 S.W.3d 473 (2004), the court of appeals cited the contemporaneous-objection rule in refusing to address an argument on appeal and stated, "[W]e do not consider an issue on appeal, even of constitutional concern, that has not been first raised to the trial court for resolution." *Id.* at 164, 189 S.W.3d at 479. The dissent, however, relied on the holdings of *Jones* and *Morrow* to support the claim that there was no such requirement for contemporaneous objections.

In this case, the *Morrow* decision is inconsistent with our jurisprudence regarding contemporaneous objections. In *Jones v. Jones,* 320 Ark. 449, 898 S.W.2d 23 (1995), a case decided after *Morrow,* we once again held that "*de novo* review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." *Id.* at 453, 898 S.W.2d at 25. We reiterated this principle in *Roberts v. Yang,* in which we stated that "it is incumbent upon the parties to raise arguments initially to the circuit court and to give that court an opportunity to consider them. . . . Otherwise, we would be placed in the position of reversing a circuit court for reasons not addressed by that court." *Roberts,* 2010 Ark. 55, at 6, —— S.W.3d at ——, 2010 WL 398641.

We have previously addressed the issue of contemporaneous objections and the lack of harmony in what were then categorized as chancery cases. In *Umberger v. Westmoreland,* 218 Ark. 632, 238 S.W.2d 495 (1951), this court directly addressed the "lack of harmony" among chancery cases regarding the necessity of making timely objections at the trial court. In *Umberger,* we noted that the requirement of contemporaneous objections in criminal and probate cases applied to chancery cases as well and stated the rationale for this principle as follows:

It is much fairer to litigants, as well as to trial judges in probate and equity cases, that they should know, when the case is decided in the trial court, what evidence is to be considered on appeal. Unless a timely objection be made by the litigants in the trial court, then the trial judge can be trapped into deciding a case on evidence that may later be held inadmissible, when objected to for the first time on appeal. . . . Therefore, we unanimously hold that in cases hereafter tried, all objections to evidence and witnesses must be made in a timely manner in the trial court, and if not so made, such objections will be considered as waived when the case reaches us on appeal. In other words, the rule stated in *Allen v. Ozark Land Co.* [55 Ark. 549, 18 S.W. 1042 (1892)], [in which the court, deciding a *chancery case* on appeal, held that the failure to register an objection, when incompetent evidence was offered in the trial court, constituted a waiver of such objection] and all the time existing in law cases, will be our rule in chancery cases and probate cases.

*Id.* at 644–45, 238 S.W.2d at 502. In keeping with this principle, to the extent that the *Morrow* and *Jones* cases conflict with our previous holdings requiring a party to make a contemporaneous objection at trial, they are overruled.

Because we hold that the *Jones* and *Morrow* cases are overruled with respect to issues brought up for the first time on appeal, we will not address the merits of Appellant Lamontagne's point on appeal. Thus, we affirm.

Affirmed.

DANIELSON and WILLS, JJ., concur.

WILLS, J., concurring.

I concur with the majority opinion but write separately to note the origin of the long-abandoned rule that an appellate court may address issues in equity cases that were not presented to the trial court.

The court of appeals certified this case to address an "issue upon which there is a perceived inconsistency" in the decisions of the supreme court-whether assignments of error in cases sounding in equity must be raised below in order to preserve the question for appellate review. The specific assignment of error in this case involves appellant Lamontagne's assertion that the trial court applied the wrong version of Ark.Code Ann. § 9–27–338(c) in granting permanent custody to the child's sister.

Under § 9–27–338(c), the trial court must determine the best interests of the child based on the entire record in the case, with the goals preferentially prioritized by the statute. The General Assembly amended § 9–27–338(c) during the 2009 session and the amendment became effective on April 6, 2009—two days before the trial court in this case held its permanency-planning hearing on April 8, 2009. The amendment changed the order of the statutory preferences, listing as second in order of preference the court's authorization of a plan to return the child to a parent, guardian, or custodian ("reunification") if the person was (1) complying with the case plan; (2) making significant measurable progress toward achieving plan goals; and (3) the child could be returned to the custody of the person within three months of the date of the permanency-planning hearing. Ark.Code Ann. § 9–27–338(c)(2). Prior to the 2009 amendment, the goal of reunification was listed as fifth in priority, and the preference of placing the child with a permanent custodian—including a relative, as in the case at hand—received higher preference (fourth) than continuing the goal of reunification. The trial court clearly applied the former version of the statute at the April 8, 2009 hearing and in its subsequent written May 6, 2009 order placing the child with her sister. Lamontagne, however, failed to object to the trial court's application of the wrong version of Ark.Code Ann. § 9–27–338(c).

As recently as our decision in *Roberts v. Yang*, 2010 Ark. 55, —— S.W.3d ——, 2010 WL 398641, this court quoted *Jones v. Jones*, 320 Ark. 449, 898 S.W.2d 23 (1995) to state that "[d]e novo review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." *See also Davis v. Davis*, 360 Ark. 233, 200 S.W.3d 886 (2005); *Thompson v. Fischer*, 364 Ark. 380, 220 S.W.3d 622 (2005); *White v. Davis*, 352 Ark. 183, 99 S.W.3d 409 (2003); *Brown v. Seeco, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994); *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).[1]

In its certification memorandum, the court of appeals cited *Jones v. Abraham*,

---

1. This court does not conduct a "plain error" review. *Marks v. State*, 375 Ark. 265, 289 S.W.3d 923 (2008); *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). Although this court can affirm a trial court's ruling based on a statute not argued by either party—*see Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004) (citing *Robinson v. State*, 274 Ark. 312, 624 S.W.2d 435 (1981))—we have not adopted the rule embraced by other states, that a pertinent statute overlooked by the trial court may be considered for the first time on appeal to reverse or remand the judgment below. *See Cummings v. Boyles*, 242 Ark. 923, 415 S.W.2d 571 (1967) (supplemental opinion on rehearing); *contra Kinnan v. Jordan*, 131 Wash.App. 738, 129 P.3d 807 (2006); *In re Jonathan P.*, 23 Conn.App. 207, 579 A.2d 587 (1990); *Bradley v. Romeo*, 102 Nev. 103, 716 P.2d 227 (1986); *but cf. Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998) (relying on statutory subsection to reverse where ap-

341 Ark. 66, 15 S.W.3d 310 (2000) as the basis for perceived inconsistency in our decisions. In *Jones v. Abraham,* this court relied on the court of appeals's decision in *Morrow v. Morrow,* 270 Ark. 31, 603 S.W.2d 431 (Ark.App.1980)—mistakenly citing it as a supreme court decision—to state as follows:

> In *Jones II,* 67 Ark.App. 304, 999 S.W.2d 698 (1999), the court of appeals did not reach the merits of appellants' first three points on appeal because it *sua sponte* cited the "contemporaneous-objection rule" as a ground for denying appellate review of the chancery court's order of dismissal. *Id.* Of the two cases cited by the appellate court in support of requiring a contemporaneous objection to the judgment or findings in chancery, neither case is apposite. *Stacks v. Jones,* 323 Ark. 643, 916 S.W.2d 120 (1996) is a case from circuit court, and *Moses v. Dautartas,* 53 Ark.App. 242, 922 S.W.2d 345 (1996) does not address the issue.
>
> We further note that the appellate opinion is in conflict with *Morrow v. Morrow,* 270 Ark. 31, 603 S.W.2d 431 (1980). In *Morrow,* we interpreted Ark. R. Civ. P. 46, and held that because appeals from chancery are reviewed *de novo,* there is no requirement of contemporaneous objections to the findings, conclusions, and decree of the court to obtain review on appeal. *Id.* For those reasons, we have concluded that the requirement for a contemporaneous objection is not applicable to this case, and *Jones II* is overruled on this point.

*Jones v. Abraham,* 341 Ark. at 72, 15 S.W.3d at 314.

In *Morrow,* the court of appeals stated that

> [t]raditionally appeals from the chancery court are reviewed de novo and there is no requirement of objections to the findings, conclusions and decree of the court to obtain review on appeal.
>
> To adopt the argument of appellee that the finding and decree granting appellee a divorce is not subject to review on appeal for failure to make objections below, would permit parties seeking a divorce to circumvent the rule requiring corroboration of grounds by the simple device of failing to object to the trial court's finding that ground was established.

*Morrow,* 270 Ark. at 33, 603 S.W.2d at 432. However, as Judge Newbern pointed out in his dissenting opinion, the court of appeals holding as to the preservation issue was entirely unsupported by any citation to authority.

The "traditional" rule referred to in *Morrow* is of ancient origin, based on the concept of "trial de novo" dating back to Roman law, where the appeal process developed under the empire to encompass "a complete rehearing of the cause de novo." Roscoe Pound, APPELLATE PROCEDURE IN CIVIL CASES 8 (Little, Brown and Company 1941). In England, appeals were largely limited to equity and ecclesiastical cases, and "instead of reviewing a record [the appellate court] reviewed the case. Instead of providing for search of a record for errors it provided for search of the truth and law of the case." *Id.* at 71. Further, the appellate court did not "send cases back to have defects in the record supplied nor to supply proof of facts susceptible of proof but not proved below. It assured that the whole case was before the reviewing tribunal by allowing evidence in that tribunal where necessary to complete or just disposition." *Id.* On

---

pellant cited the statute in which the subsection appeared and made the "very point" on appeal on which this court reversed).

appeal, the parties were "permitted to allege in the appellate tribunal what had not been alleged and to prove what had not been proved below." *Id.* at 70.

This type of appellate review of equity causes was duplicated and developed in the American colonies and United States. *Id.* at 71, 300–01; *see also* Herbert L. Meschke and Ted Smith, *The North Dakota Supreme Court: A Century of Advances,* 76 N.D. L.R. 217, 278 (2000) ("As appellate review developed in this country during the nineteenth century, since 'an appeal in equity was a hearing of the case de novo, a party was not precluded from taking a ground in the higher court which he had not suggested below,'" quoting Pound, *supra,* at 71). In chancery cases, the evidence was taken by depositions, which became part of the record, and there was no need for a bill of exceptions "because the chancellor has the whole record before him, and all legal issues are raised thereby for his consideration." *Western Coal & Mining Co. v. Hollenbeck,* 72 Ark. 44, 44, 80 S.W. 145, 146 (1903); *see also Parks v. Murphy,* 166 Ark. 564, 266 S.W. 673. 674 (1924) ("The rules of chancery practice do not require that exceptions should be taken to the various rulings of the court made in the progress of the cause ... [t]he entire proceedings are matters of record, and appeals to this court are tried de novo without the taking of technical exceptions.").[2] This concept in Arkansas equity cases lingers to the present day, evidenced by such decisions as *Jones v. Abraham, supra,* and *Morrow, supra.*

But this concept of reviewing the whole record in equity cases—carrying with it the ability of the appellate court to consider a question raised for the first time on appeal—has long since been abandoned.

*See, e.g., Hicks v. Cook,* 103 Ark.App. 207, 217, 288 S.W.3d 244, 251 (2008) (Marshall, J., concurring). As the majority opinion in this appeal notes, over half a century ago this court explicitly held in *Umberger* that de novo review of equity cases does not allow the appellate court to address issues raised for the first time by the appellant: "we unanimously hold that *in cases hereafter tried,* all objections to evidence and witnesses must be made in a timely manner in the trial court, and if not so made, such objections *will be considered as waived* when the case reaches us on appeal." 218 Ark. 632, 644, 238 S.W.2d 495, 501 (1951) (emphasis added); *see also* William K. Ball, *Objections to Evidence,* 15 Ark. L.Rev. 69, 76 (1960–61) (noting that "for a while, the Court took two diverse views in reviewing decisions made by chancellors" with one line of cases holding that "since [] chancery appeals are tried de novo, the appellate court would consider only the competent evidence in the record, whether formally objected to or not," but concluding that the inconsistency "was laid to rest in no uncertain terms by *Umberger* ").

It is both remarkable and troubling that this question persists and this court must again clarify the necessity of raising issues below in equity cases to preserve them for appeal. I write separately to "call attention of the Bench and Bar" to this issue, as this court did in *Umberger* over half a century ago.

DANIELSON, J., joins this concurring opinion.

---

2. The necessity of formal "exceptions" was repealed by Act of March 31, 1953, No. 555, § 21, 1953 Ark. Acts 1449, 1457 (former Ark. Stat. Ann. § 27–1762 (Repl.1962)), subsequently incorporated into Ark. R. Civ. P. 46, which refers instead to "objection[s]" to an action of the court.