2011 Ark. 184

**Greg SEAGO, Appellant,**

v.

**ARKANSAS DEPARTMENT OF
HUMAN SERVICES,**
Appellee.

No. 10–693.

Supreme Court of Arkansas.

April 28, 2011.

John Wesley Hall, Little Rock, for appellant.

Elisabeth McGee, Office of Chief Counsel, Little Rock, and Chrestman Group, PLLC, by: Keith L. Chrestman, for appellees.

PAUL E. DANIELSON, Justice.

Appellant Greg Seago appeals from the circuit court's order terminating his parental rights to V.S., M.S., and N.S., and granting appellee the Arkansas Department of Human Services (DHS) the power to consent to adoption.[1] Seago's children previously resided on the compound grounds of the Tony Alamo Christian Ministries (TACM) in Fouke, Arkansas; this appeal is one of five appeals before this court involving separate TACM families. Seago asserts three points on appeal: (1) that the termination of his parental rights violated his right to freely exercise his religion; (2) that the circuit court erred in admitting taped conversations under the business-records exception to the hearsay rule; and (3) that the grounds for termination of his parental rights were not proved by clear and convincing evidence. We affirm the circuit court's order.

The record reveals that on September 23, 2008, a petition for emergency custody and dependency/neglect by DHS was filed in the Miller County Circuit Court relating to V.S., a female child born August 10, 1994. The same day, an order for emergency custody was filed, and, on September 29, 2008, a probable cause order was filed. With respect to M.S., a male child born December 30, 1995, and N.S., a male child born June 20, 1999, an amended petition for emergency custody and dependency-neglect was filed on November 19, 2008, an amended order for emergency custody was filed on November 18, 2008, and a probable cause order was filed on December 22, 2008. All three children were later adjudicated dependent-neglected, and the court of appeals affirmed those orders in *Seago v. Arkansas Department of Human Services*, 2009 Ark. App. 767, 360 S.W.3d 733 (V.S.)[2] and *Seago v. Arkansas Department of Human Services*, 2010 Ark. App. 169, 2010 WL 546410 (M.S. and N.S.).

Subsequent review orders were entered. On February 24, 2009, the circuit court found that the case plan was moving toward an appropriate permanency plan for the children and that the goal of the case was reunification. It further found that while Seago had attended parenting classes, submitted to a DNA test, and visited the children on a regular basis, he had not complied with the court's order or the case plan in that he had not successfully completed parenting classes, had missed his first appointment for a psychological evaluation, did not attend counseling, and had not sought or obtained housing or employment separate and apart from TACM and its members.

In its review order of May 20, 2009, the circuit court found that the case plan was not moving toward an appropriate permanency plan for the children, but that the goal of the case remained reunification. Regarding Seago, the circuit court found that he had complied with the case plan in that he had completed parenting classes, had submitted to a DNA test, had allowed DHS access to his home, and was visiting with the children. Noncompliance was found, however, in that Seago had not

---

1. The circuit court's order also terminated the rights of the children's mother, Gina Baskin, after she voluntarily consented to termination; however, she is not a party to this appeal.

2. In the opinion, the court thoroughly set forth the facts supporting the circuit court's finding. Suffice it to say that the grounds included both physical and sexual abuse of children residing at the TACM compound, where the Seago children had lived.

obtained safe and stable housing and employment separate and apart from TACM and was not attending counseling.

On September 2, 2009, the circuit court entered its final review order, finding that the case plan was not moving toward an appropriate permanency plan for the children and that the goal of the case continued to be reunification. In addition, the circuit court found that Seago had partially complied with the case plan and orders of the court in that he had undergone a psychological evaluation and had completed parenting classes. However, the circuit court also found, Seago had not complied in that he had not obtained safe and stable housing or employment separate and apart from TACM and was not paying child support on a regular basis.

A permanency planning hearing for V.S. was held on September 1, 2009, and a permanency planning order was filed September 2, 2009, in which the circuit court found, in pertinent part:

3. The Court, mindful of the available permanency planning dispositions, does hereby determine that it is in the best interest of the juvenile that the goal of the case shall be:

(1) That the juvenile cannot be returned home, parental rights will not be terminated because no potential guardian is available, and no person is available to be the permanent custodian, therefore the permanent goal shall be Another Planned Permanent Living Arrangement (APPLA).

. . . .

6. The Court finds that the Arkansas Department of Human Services has made reasonable efforts to finalize a permanency plan, specifically, referral of the parents for psychological evaluations, parenting classes, counseling, and home visits to the father's home.

7. The Court finds that the father has partially complied with the case plan and the orders of this Court, specifically, he has gotten a psychological [evaluation], has completed parenting classes, and has paid some child support. The father has not complied in that he has not obtained safe and stable housing or employment separate and apart from the Tony Alamo Ministry, and is not paying child support on a regular basis.

In addition, the circuit court ordered Seago to obtain safe and stable housing and employment separate and apart from TACM and to continue to pay child support.

A permanency planning hearing regarding M.S. and N.S. was held on October 26, 2009, and a permanency planning order was entered on December 9, 2009. In that order, the circuit court made the following findings:

3. The Court, mindful of the available permanency planning dispositions, does hereby determine that it is in the best interest of the juveniles and that the goal of the case shall be:

(1) That parental rights will be terminated and the goal will be adoption.

. . . .

6. The Court finds that the Arkansas Department of Human Services has made reasonable efforts to finalize a permanency plan, specifically, a) referred Greg Seago for a psychological evaluation; . . . d) referred Greg Seago for individual counseling; e) providing parenting classes for Greg Seago; . . . g) offered to assist Greg Seago in applying for public or Section 8 housing; h) offered to assist Greg Seago in seeking independent employment at the Work Force Center; i) have attempted home visits to Greg Seago's current home; . . . [and] l) have offered to assist Greg Seago with transportation.

7. Greg Seago has partially complied with the case plan in that he has: a) completed parenting classes; b) has gotten a psychological evaluation; c) child support has been paid by the Tony Alamo Christian Ministries; d) has visited regularly with the juveniles. Greg Seago has not substantially complied with the case plan in that he has: a) adamantly refused to seek safe and stable independent housing for the juveniles; b) adamantly refused to seek independent employment; c) has refused to attend individual counseling as recommended by the psychological evaluation. With respect to Greg Seago the Court further finds: a) that he exposed his children to an atmosphere with a serious risk of child abuse; b) that he did not take appropriate action to protect his children from abuse or the risk of abuse; c) that Greg Seago is totally dependent upon an organization headed by a convicted sex offender; d) that Greg Seago does not believe that child abuse occurred within the confines of that organization at the direction of its leader, Tony Alamo.

Additionally, the circuit court ordered Seago to attend counseling as recommended by the psychological evaluation, continue to pay child support, and obtain safe and stable housing and employment separate and apart from TACM and maintain both for at least six months.

On December 17, 2009, DHS petitioned the circuit court to terminate Seago's parental rights to M.S. and N.S. In addition, a separate petition by attorney ad litem, Amy Freedman, sought to have the circuit court terminate Seago's parental rights to V.S.

With respect to M.S. and N.S., the respective petition alleged the following grounds:

a. the minor children, [M.S. and N.S.], have been adjudged to be [ ] dependent-neglected children and currently reside in the care and custody of the Arkansas Department of Human Services pursuant to order of the Miller County Chancery Court, Juvenile Division. The minor children have resided outside the parental home of the parents, Greg Seago and Gina Baskin, for a period in excess of twelve months and, despite a meaningful effort by the Arkansas Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parents. Services provided by the Department include, referred Greg Seago for a psychological evaluation, referred Gina Baskin for a psychological evaluation, referred Gina Baskin for individual counseling, referred Greg Seago for individual counseling, provided parenting classes for Greg Seago, referred Gina Baskin for parenting classes, offered to assist Greg Seago in applying for public or Section 8 housing, offered to assist Greg Seago in seeking independent employment at the Work Force Center, have attempted home visits to Greg Seago's current home, have assisted Gina Baskin in obtaining housing, have assisted Gina Baskin with transportation, and have offered to assist Greg Seago with transportation.

The petition further stated that,

subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that a return of the juvenile[s] to the family home is contrary to the juveniles' health, safety, or welfare, and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the issues or factors, or rehabilitate the par-

ent's circumstances, which prevent return of the juveniles to the family home.

Regarding V.S., the respective petition asserted the following grounds:

> a. the minor child, [V.S.], has been adjudged to be a dependent-neglected child and currently resides in the care and custody of the Arkansas Department of Human Services pursuant to order of the Miller County Circuit Court, Juvenile Division. The minor child has resided outside the parental home of the parents, Gina Baskin and Greg Seago, for a period in excess of twelve months and, despite a meaningful effort by the Arkansas Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parents. Services provided by the Department include referral of the parents for parenting classes, counseling, psychological evaluations, assistance in obtaining safe and stable housing and employment separate and apart from the Tony Alamo Ministry and referral of the juvenile for counseling.

It similarly alleged that,

> subsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that return of the juvenile to the family home is contrary to the juvenile's health, safety, or welfare, and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the issues or factors, or rehabilitate the parent's circumstances, which prevent return of the juvenile to the family home.

Seago answered the petitions and also filed a motion to eliminate two requirements from the case plan, in which he claimed that the requirements that he find separate housing and employment from TACM unduly interfered with his constitutional right to practice the religion of his choice. DHS responded, asserting that the prerequisites for reunification—employment and housing separate from TACM—were narrowly tailored to further the State's compelling interest of protecting the Seago children from physical and sexual abuse and neglect if returned to Seago.

On January 27–28, 2010, a termination hearing was held with respect to the Seago children, as well as to the children from the other TACM families, during which the circuit court heard arguments on Seago's motion. Certain facts were jointly stipulated to, including, in pertinent part, that

> Children were adjudicated dependent-neglected.

> The Court of Appeals in *Seago v. Arkansas Dept. of Human Services* found the evidence adduced at the environment at the compound in Fouke is potentially dangerous for the children of its members.

> . . . .

> Children have been out of the home for more than 12 months.

> The parents failed to obtain safe and stable housing separate and apart from the Tony Alamo Christian Ministries and its members.

> The parents failed to obtain stable employment separate and apart from the Tony Alamo Christian Ministries and its members.

> . . . .

> The parents had the opportunity to participate in staffings.

> . . . .

> Parents had the opportunity to provide input on the case plan.

> . . . .

The parents obtained psychological evaluations by a psychological examiner licensed in the State of Arkansas and approved by the Department.

. . . .

The parents successfully completed parenting classes.

. . . .

The parents have been visiting their children as outlined in the visitation plan.

. . .

Tony Alamo calls members of the TAMC [sic] on a regular basis from the telephone at the Bowie County Correctional Facility.

The parents continue to live in a collective environment in which their earnings and labor belong to the church, which provides for the parents' needs.

. . . .

Burt Krantz and Greg Seago testified on behalf of Tony Alamo at Tony Alamo's federal criminal sentencing hearing.

In addition, the circuit court heard testimony from all parties. At the conclusion of the hearing, the circuit court ruled on Seago's constitutional claim and the termination petition, stating, in pertinent part:

[I]t is this Court's opinion that the protection of the children in the State of Arkansas is a strong compelling interest. No question in my mind about that. It is also true that the parents have a right, as I said, to exercise their freedom of religion. I believe that the way that you exercise that is legitimate. It is not one that is just made up out of the air religion or practice. I think it is one that you, that's sincere and I think the facts show that it has existed for a considerable length of time.

Does the State's compelling interest here burden that to some extent by the requirements that we are talking about that the State has been talking about in these case plans, i.e.[,] that you maintain a safe and stable home and employment separate and apart from living on the premises of the Tony Alamo Christian Ministry's property. It does burden it to some degree, but does it reach that point that that overrides the compelling state interest. No, that is not my opinion that it does.

So my opinion as to each of the families is that the State has a strong compelling interest in protecting the children involved in each of these cases and that compelling interest has existed from the beginning of the adjudication of this case up until today. And my opinion is it will continue in the future, not as to just the children involved in these cases, but to all children within the boundaries of the State of Arkansas.

So we get to the next, the State has a strong compelling interest. And therefore, having that strong compelling interest it had the right to impose these requirements on the parents as part of its case plan, i.e.[,] housing and employment. And I focus on those because the motion focused on those and because in most cases the parents have otherwise complied with the case plan, but the motion specifically addressed the housing and employment.

. . . .

As to Cause Number JV–2008–263, which is the Seago family. Again, the Court's position regarding the respondent's motion of eliminating the requirements of housing and employment pursuant to the constitutional arguments made, that motion is denied for the reasons previously stated on the record.

The Court finds from the facts produced during the course of these proceedings that the State has made mean-

ingful efforts to achieve reunification, provide services, that Mr. Seago has failed to comply with the Court's case plan, and has stated his unwillingness to comply with those requirements for safe and stable housing and employment outside the Tony Alamo Christian Ministries.

The Court finds the children cannot safely be returned home, that the parental rights of Mr. Seago are hereby terminated and the State is authorized to proceed with the goal of adoption. The Court finds the respondent's testimony not credible.

The court further made findings regarding TACM, stating,

It is from the evidence presented before this Court one of the big concerns for this Court is, and the Court also finds from the facts that the overall operation and conduct of the Tony Alamo Ministries remains under the strict control of Mr. Alamo. The evidence produced to this Court confirms that.

The Court well understands, well understands that Mr. Alamo is restricted and is incarcerated in the custody of the United States Government, but up to this point the fact that he has been incarcerated for such a length of time here at the Bowie County Correctional Institute shows no signs of his exercising authority and control over the ministry [diminishing]. And even though his physical presence may not ˙be on the premises, the evidence indicates to the Court that the members are still submissive to his control and direction in spite of his absence from the premises. That gives the Court great concern and in spite of the respondents' attempt to convince the Court that the federal restrictions will somewhat tie his hands more than what has been done in the past,

those regulations still appear to give him considerable freedom.

Also a question in my mind as to one of the things that has been argued here today is whether or not the restriction concerning exercise of a business entity will be synonymous with the exercise of a religious ministry. And I will restate what I have said before. My orders have not prevented the respondents from attending the religious activities on the premises of Tony Alamo Christian Ministries and participating to the full extent, with the exception of eliminating total dependence upon the whim of Mr. Alamo.

Mr. Alamo from the evidence turns the valve on and off as to the financial stability of that ministry. If there [are] any decisions made on major expenditures, acquisition of assets, selling of assets, all of that is made at his discretion. There has been no evidence submitted to this Court that anyone other than he does that. Therefore, the parties are totally dependent on whether he wants to keep that house or keep that car or spend that money here or elsewhere. No one else has any control of that but him. And I can tell you he sure believes that based on the evidence presented in this courtroom. And because of that uncertainty, it makes, and because of his conviction now, that uncertainty of having a place to live may be reduced even further if the federal government determines that they can seize that property, then the families are out in the cold.

On April 16, 2010, the circuit court filed its order terminating Seago's parental rights and granting DHS the power to consent to adoption. Therein, it found that DHS had proved by clear and convincing evidence that

the minor children have resided outside the parental home of the parents in excess of twelve months, and despite a meaningful effort by the Department of Human Services to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parents in that Greg Seago has refused to seek stable housing and employment separate and apart from the Tony Alamo Ministry.

. . . .

[T]he minor children's parents, Gina Baskin and Greg Seago, have willfully failed to provide significant material support in accordance with their means in that Gina Baskin and Greg Seago are currently in arrears on their child support.

. . . .

[S]ubsequent to the filing of the original petition for dependency-neglect, other factors or issues arose which demonstrate that return of the juveniles to the family home is contrary to the juveniles' health, safety, or welfare, and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors, or rehabilitate the parents' circumstances, which prevent return of the juveniles to the family home.

It further found that it

considered the likelihood that the juveniles will be adopted and the potential harm, specifically the negative impact on the health and safety of the juveniles of returning them to the custody of their parents and the Court finds that termination of parental rights is in the best interest of the juveniles.

. . . .

[And that] the testimony of Greg Seago was not creditable.

Seago now appeals.

For his first point on appeal, Seago argues that his right to freely exercise his religion, which he claims is a fundamental right, was violated by the case plan's requirements that he both move away from and cease working for TACM. He contends that strict-scrutiny review was required and that the case plan's requirements were in no way the least restrictive means. He claims that his children "were not seriously at risk," and that, applying the strict-scrutiny standard to his case, he should have prevailed and his children should have been returned to him. He finally contends that this court should overturn the court of appeals' decision in *Thorne v. Arkansas Department of Human Services,* 2010 Ark. App. 443, 374 S.W.3d 912, asserting that it erroneously applied a balancing test rather than the required strict scrutiny. For the reasons set forth in *Myers v. Arkansas Department of Human Services,* 2011 Ark. 182, 380 S.W.3d 906, delivered this same day, we affirm.

For his second point on appeal, Seago argues that the circuit court erred in admitting as business records certain taped conversations of TACM's leader, Tony Alamo, recorded while he was detained in a correctional facility. He contends that the recordings were not business records due to the fact that the correctional facility in which the recordings were made was a public office and not a business. He further contends that even if the prison was a business, the contents of the recordings were not relied upon by the prison, thereby disqualifying the records from constituting business records. Finally, he claims, the admission of the recordings violated his rights under the Confrontation Clause. For the reasons set forth in *Myers, supra,* on this issue, we affirm.

■ For his final point on appeal, Seago argues that the termination of his parental rights was not supported by clear and convincing evidence. He contends that there is nothing in the record to suggest that any of his children "have *ever, ever* been mistreated, subjected to hunger or lack of medical care, nor have they been in real danger of sexual abuse." (Emphasis in original.) He maintains that the sole basis for terminating his rights was his guilt by association with Alamo and the speculative belief that Alamo would break prison rules in the future and impose his will upon TACM parents over the phone. For these reasons, he asserts that the termination of his parental rights should be reversed. DHS counters that the requisite findings were made and not clearly erroneous; therefore, it asserts, the circuit court's order should be affirmed.

■ Our standard of review for cases involving the termination of parental rights is well established. *See Posey v. Arkansas Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). Arkansas Code Annotated § 9–27–341(b)(3) (Repl.2009) requires an order forever terminating parental rights to be based upon clear and convincing evidence. Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *See id.* When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *See id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *See id.* Such cases are reviewed de novo on appeal. *See id.* This court does, however, give a high deference to the circuit court because that court is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *See id.*

An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent, parents, or putative parent or parents; and

(B) Of one (1) or more of the following grounds:

(i)*(a)* That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

*(b)* It is not necessary that the twelve-month period referenced in subdivision (b)(3)(B)(i) *(a)* of this section immediately precede the filing of the petition for termination of parental rights or that it be for twelve (12) consecutive months;

(ii)*(a)* The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

*(b)* To find willful failure to maintain meaningful contact, it must be shown that the parent was not prevented from visiting or having contact with the juvenile by the juvenile's custodian or any other person, taking into consideration the distance of the juvenile's placement from the parent's home.

*(c)* Material support consists of either financial contributions or food, shelter, clothing, or other necessities when the contribution has been requested by the juvenile's custodian or ordered by a court of competent jurisdiction.

*(d)* It is not necessary that the twelve-month period referenced in subdivision (b)(3)(B)(ii) *(a)* of this section immediately precede the filing of the petition for termination of parental rights or that it be for twelve (12) consecutive months;

(iii) The presumptive legal father is not the biological father of the juvenile and the welfare of the juvenile can best be served by terminating the parental rights of the presumptive legal father;

(iv) A parent has abandoned the juvenile;

(v) *(a)* A parent has executed consent to termination of parental rights or adoption of the juvenile, subject to the court's approval.

*(b)* If the consent is executed under oath by a person authorized to administer the oath, the parent is not required to execute the consent in the presence of the court unless required by federal law or federal regulations;

(vi)*(a)* The court has found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, sexual abuse, or sexual exploitation, any of which was perpetrated by the juvenile's parent or parents or step-parent or step-parents.

*(b)* Such findings by the juvenile division of circuit court shall constitute grounds for immediate termination of the parental rights of one (1) or both of the parents;

(vii)*(a)* That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

*(b)* The department shall make reasonable accommodations in accordance with the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., to parents with disabilities in order to allow them meaningful access to reunification and family preservation services.

*(c)* For purposes of this subdivision (b)(3)(B)(vii), the inability or incapacity to remedy or rehabilitate includes, but is not limited to, mental illness, emotional illness, or mental deficiencies;

(viii) The parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life; or

(ix)*(a)* The parent is found by a court of competent jurisdiction, including the juvenile division of circuit court, to:

*(1)* Have committed murder or manslaughter of any juvenile or to have aided or abetted, attempted, conspired, or solicited to commit the murder or manslaughter;

*(2)* Have committed a felony battery that results in serious bodily injury to any juvenile or to have aided or abetted,

attempted, conspired, or solicited to commit felony battery that results in serious bodily injury to any juvenile;

*(3)(A)* Have subjected any juvenile to aggravated circumstances.

*(B)* "Aggravated circumstances" means:

*(i)* A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification; or

*(ii)* A juvenile has been removed from the custody of the parent or guardian and placed in foster care or in the custody of another person three (3) or more times in the last fifteen (15) months;

*(4)* Have had his or her parental rights involuntarily terminated as to a sibling of the child; or

*(5)* Have abandoned an infant, as defined at § 9–27–303(2).

*(b)* This subchapter does not require reunification of a surviving child with a parent who has been found guilty of any of the offenses listed in subdivision (b)(3)(B)(ix)*(a)* of this section.

Ark.Code Ann. § 9–27–341(b)(3) (Repl. 2009). We cannot say that we are left with a definite and firm conviction that a mistake was made by the circuit court.

Here, Malynda Cree, a program director for CASA, testified that, in her opinion, the environment of the TACM compound, where Seago continued to live, remained unsafe, due to Alamo's continued directives from prison. She testified that the risk of harm from the conditions described by the court of appeals remained; specifically, she pointed to the fact that the TACM parents remained dependent on the ministry for their everyday, basic needs. She stated her belief that the children would not be safe if returned to their parents' custody, as long as the parents continued in the same community with the endangering factors that were previously present, such as physical beatings, fasting, and underage marriage. She testified that ∣₁₆the parents had not taken steps to rectify the conditions that caused removal in that they continued to remain in the same living conditions, having failed to obtain and maintain safe and stable housing apart from TACM.

Ms. Cree further testified that the parents' current housing on the compound was not safe or stable due to the fact that the federal government had the ability to seize the property, on which the parents were living, in conjunction with Alamo's arrest and conviction. She stated that such instability was potentially harmful to the families' children. She further stated that none of the parents had reliable means to support their children independent of TACM, which currently supplied all of their needs. She testified that, while it was a hard decision, she believed that there was a potential risk of harm to the health and safety of the children caused by their parents' lack of stable employment or means to support them and that she could not recommend the children be returned to their parents based on the parents' lack of compliance and the children's endangerment.

James Syler of the Office of Child Support Enforcement testified that Seago's balance for child support was $112. Cindy Allen, a family service-worker supervisor with the Division of Children and Family Services, also testified. She stated that one of the needs identified in the Seago case plan—safe and stable housing for his children separate and apart from TACM—had not been achieved. She testified that, while she had offered to transport Seago to the housing-authority office, as well as

the Texarkana Work Force, and offered to help him look online for jobs, Seago had not accepted her offers. She stated that, to her knowledge, Seago did not have employment separate and apart from TACM. She further testified that, while individual counseling was recommended for Seago and that a referral was made, she had no information that he had ever participated in such counseling. She also testified that she did not believe it was in the children's best interest to be returned to Seago's custody, because she believed that there would be a great risk of harm to the children's health and safety. Specifically, Ms. Allen feared for the boys' physical safety and V.S.'s mental and physical safety.

Gayla Griffin, an adoption-specialist supervisor, testified with respect to the children's likelihood of adoption. She testified that, within her database, they had families that would be interested in adopting children with the characteristics of V.S., M.S., and N.S. She stated that based on the information she had, the three Seago children would be adopted.

B.S., a fifteen year old, also testified. A biological child of the Seagos, she testified she left the ministry and currently lived with her mother, Gina. She testified that when she lived with her father, he would often leave town to "track," leaving them in the homes of other TACM families. She testified that when she was fourteen years old, she moved into Alamo's house, where she suffered physical abuse, and that her father did not protect her. She further testified that when her brothers got into trouble, her father would beat them with a board. She stated that she did not feel that her sister and brothers would be safe if they were returned to her father's custody, because she did not believe that he had "changed." She further testified that her siblings' health and safe-ty would be threatened if they were to go back.

Seago also testified. He stated that he was called to serve the Lord "twenty-four seven in a missionary style" and that he could not continue that if he obtained separate housing and employment from TACM. He testified that the reason he did not seek separate housing and employment apart from TACM was "because of the fear of the Lord because of the calling that I have on my life." He stated that there was nothing that DHS could have done for him to obtain housing or employment separate and apart from TACM.

Seago testified that Alamo was still the pastor of the church and that the church was still running according to the practices and preaching of Alamo. He testified that he "absolutely" subscribed to the practices and beliefs of TACM. He further stated that he believed whatever the Bible said about "when a girl reaches puberty she is old enough to consent to be married" and that the Bible teaches about the use of corporal punishment for recalcitrant children. He further confirmed his belief that Alamo was a prophet and stated that he did not believe that B.S. or V.S. were in danger when they lived in Alamo's home. Seago also admitted that he had not obtained separate employment or housing from TACM. In addition, as already set forth, it was stipulated by the parties that the Seago children had been adjudicated dependent-neglected and had been out of the home for more than twelve months.

Our review of the foregoing reveals that clear and convincing evidence existed to support the termination of Seago's parental rights to V.S., M.S., and N.S. Specifically, the record makes clear that Seago failed to remedy the conditions that caused removal by failing to obtain housing and employment separate and apart from TACM, despite DHS's meaningful efforts.

Accordingly, we affirm the circuit court's order terminating Seago's parental rights.

Affirmed.