2011 Ark. 185

**Miriam KRANTZ and Albert Krantz, Appellants,**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES,** Appellee.

No. 10–694.

Supreme Court of Arkansas.

April 28, 2011.

John Wesley Hall, Little Rock, for appellant.

Elisabeth McGee, Office of Chief Counsel, Little Rock, and Chrestman group, PLLC, by: Keith L. Chrestman, for appellees.

KAREN R. BAKER, Justice.

Appellants Miriam Krantz and Albert Krantz appeal from a Miller County Circuit Court order terminating their parental rights to their six children: L.K., born September 23, 1996; A.K., born April 20, 1999; A.K.2, born November 10, 2001; S.K., born August 1, 2003; C.K., born June 28, 2006; and R.K., born September 1, 2007. On appeal, they argue that the trial court erred in terminating their parental rights because: the order violated their rights, and those of their children, guaranteed under the federal and state constitutions; the circuit court erred in ruling that taped conversations between Tony Alamo and unidentified women were admissible; and the circuit court's finding that the juveniles faced potential harm if returned to the custody of the Krantzes was based upon speculation and conjecture. This case presents an issue involving the Arkansas Constitution. Therefore, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(1) (2010). We affirm.

This case is one of five cases decided today that involves children who were removed by appellee Arkansas Department of Human Services (DHS) from the compound of the Tony Alamo Christian Ministries ("the TACM") in Fouke, Arkansas. The procedural history of these cases is set forth in *Myers v. Arkansas Department of Human Services*, 2011 Ark. 182, 380 S.W.3d 906.

On November 18, 2008, an ex parte order for emergency custody was entered by the Miller County Circuit Court for the Krantz children, which placed the children in the custody of DHS. A probable cause order was entered on December 22, 2008, reflecting that the Krantzes stipulated to probable cause, that the conditions existing at the time of the emergency order continued to exist, and that custody of the juveniles should remain with DHS. On February 9, 2009, the juveniles were adjudicated dependent-neglected.[1]

At the October 27, 2009 permanency-planning hearing, the court found that it was in the best interests of the juveniles that the parental rights be terminated and that the goal was adoption. The court determined that despite reasonable efforts by DHS, the conditions that caused the children to be removed had not been remedied; in that, the Krantzes had adamantly refused to obtain safe, stable, independent housing, or seek independent employment apart from TACM, and that Albert Krantz refused to attend counseling as recommended in his psychological evaluation. The court found that the Krantzes had exposed the juveniles to an atmosphere with a serious risk of child abuse, that the parents were totally dependent upon an organization headed by a convicted sex offender, and that they refused to believe that child abuse had occurred within the confines of the TACM. On April 15, 2010, the circuit court entered an order terminating the parental

1. In *Krantz v. Arkansas Department of Human Services*, 2010 Ark. App. 316, 2010 WL 1487246, the court of appeals affirmed the order adjudicating the Krantz children dependent-neglected, relying upon the reasoning set forth in *Thorne v. Arkansas Department of Human Services*, 2010 Ark. App. 317, *substituted on denial of reh'g by* 2010 Ark. App. 443, 374 S.W.3d 912.

rights of the Krantzes. This appeal followed.

## I. *Free Exercise of Religion*

■ The Krantzes argue that the termination order violates their parental rights and the rights of their children under the First and Fourteenth Amendments to the United States Constitution and article 2, section 24 of the Arkansas Constitution. They assert that *Thorne v. Arkansas Department of Human Services,* 2010 Ark. App. 443, 374 S.W.3d 912, should be overruled because it violates this court's standard of review in free-exercise-of-religion cases. For the reasons set forth in *Myers, supra,* we affirm the circuit court's decision.

## II. *Admission of the Telephone Conversations*

■ The Krantzes argue for reversal that the evidence relied upon by the trial court in terminating their parental rights was improperly admitted. Specifically, they assert that the taped conversations between Tony Alamo while at the Bowie County Correctional Facility and unidentified TACM members were hearsay, and that their probative value was outweighed by their prejudicial effect. For the reasons set forth in *Myers, supra,* we affirm the circuit court's decision.

## III. *Evidence of Potential Harm*

■ The Krantzes assert that "the grounds for termination of [their] parental rights were not proven by clear and convincing evidence." However, they only challenge the finding of the circuit court regarding the potential harm the juveniles would face if returned to the custody of the Krantzes. Termination of parental rights is a two-step process. *J.T. v. Ark. Dep't of Human Servs.,* 329 Ark. 243, 947 S.W.2d 761 (1997). The first step is proof of a statutory ground. Ark.Code Ann. § 9–27–341(b)(3) (Repl. 2009). Because the Krantzes do not challenge the statutory grounds in support of the termination order, we need not address this issue.

The second step requires consideration of the likelihood that the juveniles will be adopted and the potential harm caused by returning the custody of the children to the Krantzes. *See* Ark.Code Ann. § 9–27–341(b)(3)(A). The Krantzes do not challenge the likelihood that their children will be adopted; however, they do challenge the finding required by Ark.Code Ann. § 9–27–341(b)(3)(A)(ii) that an order forever terminating the parental rights shall be based upon a finding of "[t]he potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the ... parents." We therefore address only whether the evidence supported the circuit court's finding on potential harm.

Joint Exhibit Number 1 was admitted into evidence at the termination hearings of Bethany Myers, Alphonzo Reid, Greg Seago, Carlos and Sophia Parrish, and the Krantzes. It was a joint stipulation between all of the above-referenced parties and DHS to numerous facts applicable to all of the parents. The relevant stipulations were: that the parents failed to obtain safe and stable housing separate and apart from the TACM and its members; that the parents failed to obtain stable employment separate and apart from the TACM and its members; that the parents have refused to obtain housing and employment separate and apart from the TACM because the parents believe these requirements to be unconstitutional violations of the First Amendment right of parents to the free exercise of religion; that Tony Alamo was criminally convicted in federal court of violation of the Mann Act; that Tony Alamo has telephone privi-

leges at the Bowie County Correctional Facility; that Tony Alamo calls members of the TACM on a regular basis; that the parents continue to live in a collective environment in which their earnings and labor belong to the TACM, which provides for the parents' needs; that Albert Krantz and Greg Seago testified on behalf of Tony Alamo at Tony Alamo's federal criminal sentencing hearing; and, that testimony and exhibits from all of the cases would be incorporated into each case.

Miriam Krantz testified that she worked for the TACM as a cook and in the audio department and that she was afraid of losing her husband, Albert Krantz, if she left the TACM to find separate housing and employment as required by the DHS case plan. She said that her commitment to God precluded her from leaving the TACM. She admitted that Tony Alamo was informed that she wanted to use TACM's money to buy clothes for her children, but denied that his permission was required, even though in the taped conversation Tony Alamo said to "give her the money." She said that she had no knowledge of the rapes of minor children affiliated with the TACM until many months after her children were taken by DHS. She testified that she was aware that young girls lived in Tony Alamo's home, but she thought they lived there of their own free will. She denied having any personal knowledge about children affiliated with the TACM being beaten, but she admitted learning of the beatings through newspaper articles. She admitted being aware of a claim that Tony Alamo had molested a girl while at a federal correctional institution but asserted that she had no personal knowledge of it. She denied that abuse would have to happen before her eyes before she would believe it, but she repeatedly stated that as she had no personal knowledge of the abuse, she did not believe that abuse had occurred at the TACM.

Miriam Krantz admitted that if she broke a rule or regulation of the TACM, she could be ejected from the home provided to her by the ministry. She testified that they received forty dollars a week for discretionary spending. Expensive items, such as surgery, were submitted to Tony Alamo for his approval, but other items were submitted to a person at the TACM who cut a check. She said that for the past several months she has kept a vehicle owned by the ministry with her at all times, whereas in the past she had been required to check it out when she wanted to use it. Although she stated that she would never allow her children to participate in underage marriages, she found nothing wrong with Tony Alamo's underage marriages. She also stated that she would never let her children be abused.

Albert Krantz testified that he did not do what was required of him to get his children out of foster care because his conscience would not allow him to follow the case plan. He said that he believed his eternal soul would be condemned to damnation if he were to leave the ministry. He stated that he would never allow his children to marry while underage but opined that the Bible permitted such marriages. He said that he had not followed, and would not follow, the court's orders to get his children back.

Malynda Cree testified that she was the program director of Court Appointed Special Advocates for children. She had been involved with the Krantz, Seago, Parrish, Myers, and Reid cases since they began in September 2008, and did not believe that the running of the TACM had changed. She stated that Tony Alamo continues to direct the day-to-day operations of the TACM through his approval of payment of the TACM's bills, his requirement that the

TACM members report infractions to him of other members' conduct, and his approval of what the TACM members were allowed to eat. She said that in the taped telephone conversations, no one had ever disagreed with Tony Alamo or his directives.

■ An order forever terminating parental rights must be based on clear and convincing evidence. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2009). The inquiry on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence was clearly erroneous. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

There was ample evidence that Tony Alamo still controlled the daily affairs of the TACM. The TACM furnished the Krantzes their housing, transportation, and money to meet their daily needs. The Krantzes did not even consider that Tony Alamo's actions, past or present, presented a danger to their children. Although they asserted that they would not permit abuse of their children, the circuit court found that their testimony was not credible. We give great deference to the circuit court as it is in a far superior position to judge the credibility of the witnesses. *Posey v. Ark. Dep't of Health & Human Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). Based upon this record, we cannot say that the circuit court clearly erred in finding that due to potential harm to the children if returned to the custody of the Krantzes, termination of parental rights was in the best interest of the juveniles.

Affirmed.