SLIP OPINION



# SUPREME COURT OF ARKANSAS

No. CV–13–570

| | |
|---|---|
| TONIA INGLE<br><div align="right">APPELLANT</div> | **Opinion Delivered** February 6, 2014 |
| V. | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. JV-12-387-3] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><div align="right">APPELLEE</div> | HONORABLE STACEY ZIMMERMAN, JUDGE |
| | <u>REVERSED AND REMANDED WITH DIRECTIONS; COURT OF APPEALS' OPINION VACATED</u>. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellant Tonia Ingle brings this appeal from an order entered by the Washington County Circuit Court placing permanent custody of her son, C.N., with his biological father and closing the dependency-neglect case. For reversal, Ingle contends that the circuit court lacked the authority to vest permanent custody in the father and to close the dependency-neglect proceeding, sua sponte, and without notice at the six-month review hearing. She also argues that there is insufficient evidence to support the circuit court's decision not to return C.N. to her custody. We agree with the second point and reverse and remand for the entry of an order consistent with this opinion.

The record reflects that the Arkansas Department of Human Services (DHS) filed a petition in the Washington County Circuit Court on May 7, 2012, seeking emergency custody of C.N., who was born on September 7, 2009. According to the affidavit, the child

had no caretaker following Ingle's arrest on charges of possession of drug paraphernalia that had been found in her home. At the time of her arrest, Ingle identified Jason Neal of Missouri as C.N.'s father, but she declined to disclose any further contact information because, according to the affidavit, Ingle stated that Neal had been abusive to her in the past, and as a result, she did not want C.N. to live with him. That same day, the circuit court entered an ex parte order placing the child in the emergency custody of DHS. In this order, the circuit court appointed an attorney ad litem for C.N.

On May 11, 2012, the circuit court entered a probable-cause order finding that returning C.N. to Ingle's custody was contrary to the child's best interest. The circuit court placed custody of C.N. with Neal on the condition that the child not be left unsupervised with Neal's wife, who had a suspended driver's license and two active warrants for her arrest. The court also found that Ingle had a clean drug test that date, and it ordered that she be allowed weekly, supervised visitation once she passed two more drug tests. The circuit court ordered DHS to conduct a home study on Ingle's parents. The order contained no provision for a study to be completed of Neal's home in Missouri.

The circuit court held the adjudication hearing on June 8, 2012. In the adjudication and disposition order entered following the hearing, the circuit court determined that C.N. was dependent-neglected based on a finding that the child had been left without a legal caretaker upon Ingle's arrest for possession of drug paraphernalia after a drug pipe and a drug straw were found in the home where C.N. was present, "which placed the child in a dangerous situation." The court maintained custody of the child with Neal and continued

2

weekly visitation with Ingle under the supervision of her parents. The circuit court also set the goal of the case as reunification with Ingle or Neal. The court directed Ingle to undergo a psychological evaluation, to participate in individual counseling, to submit to random drug testing on a weekly basis, to maintain stable housing and employment, and to complete parenting classes. The circuit court also ordered Ingle to pay Neal child support in the amount of $25 per week. In conjunction with this requirement, the court abated Neal's current child-support obligation for C.N. and ordered him to pay his arrearage in child support. Finally, the adjudication order contained a provision advising Ingle that the "clock is ticking." This provision informed Ingle that the court would hold a permanency-planning hearing in one year and warned that the court at that time could place permanent custody in someone else or terminate her parental rights if she had not corrected the conditions that caused her child's removal or if she had not made substantial progress toward reunification. The record also reveals that Ingle passed a drug test on the date of the hearing.

The circuit court held the six-month review hearing on November 14, 2012. Tameika Rector, a family-service worker,[1] testified that Ingle had been cooperative with DHS during the pendency of the case. Rector reported that Ingle had completed parenting classes, that she had participated in counseling and had been released, and that all of Ingle's drug screens had been negative.[2] She said that Ingle had completed a substance-abuse

---

[1]Rector had been involved in the case for four weeks, replacing the assigned case worker who had recently given birth to a child.

[2]The most recent drug screen showed the presence of opiates, but the circuit court accepted the explanation that Ingle had a prescription for pain medication following the

assessment, and the evaluation report, which was admitted into evidence, stated that Ingle did not have a substance-abuse disorder.  To Rector's knowledge, Ingle had visited C.N. on a weekly basis.  Rector also testified that Ingle's home was appropriate and that she had maintained stable employment.  In addition, Rector verified that the prosecutor had dismissed Ingle's drug-paraphernalia charges.  Rector said that she could not locate Ingle's psychological evaluation, but she stated that a referral had been made.  Rector recommended that C.N. be returned to Ingle's custody.

In her testimony, Ingle stated that it was her desire to have C.N. return to her home. She testified that the charges against her had been dismissed based on the affidavit of Christopher Robin Cozine, who averred that the paraphernalia discovered in Ingle's home belonged to him and that Ingle did not know of its presence.  Ingle introduced into evidence an order nolle prossing the charges. She testified that she did not recall being given a copy of DHS's referral for a psychological evaluation.  Ingle explained that there might have been a miscommunication in that her caseworker had recently had a baby.[3]  Ingle further testified that she and her fiancé, Tommy Bausinger,[4] had recently purchased a home together and that her seventeen-year-old daughter lived with her on the weekends.  She said that her daughter stayed during the week with a woman named Patti, whom she had met at God's Pantry, so

recent birth of another child by cesarean section.

[3]The attorney for DHS introduced into evidence a referral that had been completed but not signed by a DHS supervisor.

[4]Previously, the circuit court had entered an order permitting Bausinger to supervise Ingle's visits with C.N. while her parents were on an extended vacation.

that her daughter could attend school in another school district. However, she could not recall Patti's last name.

Neal testified that C.N. was doing great and had adjusted well in his care. He was opposed to C.N. returning to Ingle's custody because he was "scared about her lifestyle" in that Ingle had been "in and out of jail." Neal testified that he had taken Ingle to court over custody of C.N. two years ago and that he did not obtain custody at that time. Neal stated that his wife and her children no longer lived with him and C.N. because his wife had a gambling problem, and he testified that they would all live together in a new home once his wife resolved her problems. Neal admitted that he was behind in his child-support payments. He added that Ingle's parents had legal custody of Ingle's daughter.

Ingle testified in rebuttal. She said that it was not true that she had been in and out of jail as Neal had claimed. Ingle also testified that she had obtained a protective order against Neal and that Neal had not obtained custody of C.N. "because of the five years of extreme abuse." Ingle attempted to introduce into evidence photographs that she said portrayed the injuries Neal had inflicted on her. Although there was no objection, the circuit court refused to admit them because "[t]hat was litigated."

Following the presentation of testimony, the parties presented closing arguments. The ad litem for C.N. agreed with DHS's recommendation that C.N. be returned to Ingle's custody. After recounting the testimony, the circuit court announced from the bench that C.N. was no longer dependent-neglected and that it was ceasing reunification services, granting Neal permanent custody, and closing the case. In the review order and order of

closure, the circuit court incorporated its oral ruling from the bench and made findings that Neal had complied with the court's orders and the case plan by maintaining stable housing and employment, that C.N. was doing well in Neal's custody, and that the child no longer needed services from DHS because Neal was meeting the child's needs. The circuit court further found that Ingle had complied with

> some of the court orders and the case plan. Specifically, she has passed weekly drug screens, except she was positive for opiates Nov. 13, 2012 (she has a prescription). She has completed parenting [classes], maintained stable housing, completed hair follicle [testing] that was negative, completed counseling, resolved her criminal charges, which were dropped, [and] completed [a] drug/alcohol assessment. She has <u>not</u> had her psych eval[5] and has not paid child support – however, her obligation is going towards the $2813.00 [arrearage] owed by dad. She is not credible in her testimony today.

The circuit court set Ingle's visitation schedule and continued the requirement that her parents provide supervision. The court also ordered Ingle to pay $25 per week in child support once Neal satisfied his arrearage.

Ingle appealed, and the court of appeals affirmed the circuit court's decision. *Ingle v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 418. This court granted Ingle's petition for review. When we grant a petition for review, we treat the appeal as if it had been originally filed in this court. *Walls v. Humphries*, 2013 Ark. 286, ___ S.W.3d ___.

Ingle first argues on appeal that the circuit court's disposition of halting reunification services, placing C.N. in Neal's permanent custody, and closing the case at the six-month review hearing is not authorized under the juvenile code. DHS and C.N.'s ad litem have

---

[5]In its oral ruling, the circuit court accepted Ingle's explanation that the family service worker did not follow up on this requirement because she left on maternity leave.

filed a joint brief, and they concur with Ingle's overall contention that the circuit court failed to adhere to the requirements of the applicable statutes before granting permanent custody and ceasing reunification services, particularly when the circuit court halted services without notice, which they contend is required by Arkansas Code Annotated section 9-27-365 (Repl. 2009).

Unfortunately, we are not able to resolve this issue because it is being raised for the first time on appeal. In *Lamontagne v. Arkansas Department of Human Services*, 2010 Ark. 190, 366 S.W.3d 351, this court reaffirmed the necessity of interposing a contemporaneous objection in order to preserve an issue for appeal. In so holding, we reiterated the principle that "[d]e *novo* review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." *Lamontagne*, 2010 Ark. 190, at 4, 366 S.W.3d at 353 (quoting *Roberts v. Yang*, 2010 Ark. 55, at 7, 370 S.W.3d 170, 174). In that case, Lamontagne argued on appeal that the circuit court erred by applying an outdated version of a statute to her case. We declined to address the argument in the absence of an objection below. As in *Lamontagne*, Ingle did not argue before the circuit court that its actions were not authorized under the code. As a consequence, the issue Ingle raises has not been preserved for appeal.

Ingle also contends that the circuit court's decision is not supported by the evidence. She argues that there is no basis in the evidence for the circuit court's conclusion that returning custody of C.N. to her was contrary to his best interest. Ingle points out that she was in compliance with the case plan and orders of the court and that both DHS and the ad

litem recommended that C.N. be restored to her custody. Again, DHS and the ad litem agree with Ingle's argument. Unlike the previous issue, this contention is properly before us. In a long line of cases, we have ruled that, in a nonjury trial, a party who does not challenge the sufficiency of the evidence does not waive the right to do so on appeal. *$15,956 in U.S. Currency v. State*, 366 Ark. 70, 233 S.W.3d 598 (2006) (citing *Oates v. Oates*, 340 Ark. 431, 435, 10 S.W.3d 861, 864 (2000); *Firstbank of Ark. v. Keeling*, 312 Ark. 441, 445, 850 S.W.2d 310, 313 (1993); *Bass v. Koller*, 276 Ark. 93, 96, 632 S.W.2d 410, 412 (1982)).

This court reviews findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. *Porter v. Ark. Dep't of Human Servs.*, 374 Ark. 177, 286 S.W.3d 686 (2008). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Seago v. Ark. Dep't of Human Servs.*, 2011 Ark. 184, 380 S.W.3d 894. We give great deference to the circuit court as it is in a far superior position to judge the credibility of the witnesses. *Krantz v. Ark. Dep't of Human Servs.*, 2011 Ark. 185, 380 S.W.3d 927.

In the present case, the circuit court declared that C.N. was dependent-neglected because he had no legal caretaker following Ingle's arrest. Since that time, Ingle's criminal charges have been resolved in her favor. She passed every drug test, and a substance-abuse evaluation revealed that she has no substance-abuse disorder. Ingle had also fully cooperated with DHS and had complied with the requirements of the case plan and orders of the court. In a scant six months' time, only the obligation of undergoing a psychological evaluation

remained unsatisfied, and the circuit court accepted Ingle's explanation for not having completed the evaluation. Although the circuit court stated that Ingle was not a credible witness, the facts as found by the circuit court demonstrating Ingle's compliance with the case plan are unaffected by the court's credibility determination. While there is admittedly some evidence to support the circuit court's decision, when the entire record is considered, we are left with a definite and firm conviction that a mistake was committed when the circuit court found that it was in C.N.'s best interest to be placed in the permanent custody of Neal. On de novo review of a fully developed record, when we can plainly see whether the equities lie, we may enter the order that the circuit court should have entered. *See Cochran v. Cochran*, 309 Ark. 604, 832 S.W.2d 252 (1992); *Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979); *Fye v. Tubbs*, 240 Ark. 634, 401 S.W.2d 752 (1966); *Narisi v. Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959). Accordingly, we reverse the circuit court's order and remand with directions for the court to return custody of C.N. to Ingle. Of course, this court cannot know what has transpired since the circuit court entered its order vesting custody in Neal. If facts have developed during the pendency of the appeal that would cause serious concern about returning C.N. to Ingle's care, any party may file a petition requesting the circuit court to address those matters.

Reversed and remanded with directions; court of appeals' opinion vacated.

HANNAH, C.J., CORBIN AND DANIELSON, JJ., concurs in part; dissents in part.

**PAUL E. DANIELSON, Justice, concurring in part; dissenting in part.** Because I wholeheartedly agree that the circuit court clearly erred in finding that it was in C.N.'s best

9

interest to be placed in Mr. Neal's permanent custody, I concur, and I would reverse and remand. I strongly dissent, however, from this court's further direction to the circuit court to return custody to Ms. Ingle forthwith.

There is no question in my mind that the circuit court clearly erred when it placed permanent custody of C.N. with Mr. Neal in November 2012. Therefore, it is appropriate for this court to reverse the matter and remand it, as that has historically been this court's practice. *See, e.g.*, *Mahone v. Arkansas Dep't of Human Servs.*, 2011 Ark. 370, 383 S.W.3d 854. But the majority decides to take matters into its own hands and goes much further, directing that custody of C.N. be returned to Ms. Ingle immediately, despite its statement that it cannot know what has transpired since the circuit court's order. While the majority throws in a caveat of sorts, the fact remains that it has now been well over a year since the circuit court's decision. Such chances should not be taken when we are talking about the well-being of a child.

As the majority correctly points out, this court has on rare occasions entered an order on de novo review of *a fully developed record* in matters of equity. *See, e.g.*, *Cochran v. Cochran*, 309 Ark. 604, 832 S.W.2d 252 (1992) (rendering an order for the appropriate amount of child support based on the record); *Fye v. Tubbs*, 240 Ark. 634, 401 S.W.2d 752 (1966) (rendering an order in a child-custody matter to revert custody to the arrangement set forth in the original decree); *Narisi v. Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959) (reversing and remanding for entry of an order consistent with the opinion in a divorce matter). But the instant case is one of dependency-neglect, which is exceedingly different from the ordinary

case in equity. Even if the record could be considered fully developed in the instant case, the record before us most certainly concludes with the circuit court's 2012 order, and there is absolutely no way of knowing what has transpired in these people's lives since that time. Again, I fully agree that Ms. Ingle should have been awarded custody of C.N. in November 2012 as that was in his best interest and that the circuit court clearly erred in its finding to the contrary. Nonetheless, it is C.N.'s best interest that is the polestar consideration, and I, for one, think the more responsible course and prudent disposition would be for this court to reverse and remand, such that further proceedings in the matter could be had. I therefore respectfully concur in part and dissent in part.

HANNAH, C.J., and CORBIN, J., join.

*Deborah R. Sallings*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, DHS—Office of Policy, and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellee.