

# SUPREME COURT OF ARKANSAS

**No.** CV–14–475

|  |  |
|---|---|
| IN THE MATTER OF THE GUARDIANSHIP OF S.H., a minor | **Opinion Delivered** February 26, 2015 |
| TAMERA GRACE TROESKEN<br>APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT [NO. PR–08–74] |
| V. | |
| LARRY HERRINGTON AND DONNA HERRINGTON<br>APPELLEES | HONORABLE DAVID G. HENRY, JUDGE |
|  | <u>REVERSED AND REMANDED</u>. |

## RHONDA K. WOOD, Associate Justice

After remand from this court, the circuit court again denied a natural parent's petition to terminate a guardianship over her child. We hold that the circuit court applied a legal standard that failed to safeguard the natural parent's fundamental right with respect to the care, custody, and control of her child. We therefore reverse and remand for the circuit court to enter an order returning the child to her mother's custody.

### I.    *Procedural History*

Tamera Troesken gave birth to S.H. in 2005. S.H.'s biological father is Scott Herrington. In 2008, Tamera consented to a permanent guardianship over S.H. in favor of Scott's parents, Larry and Donna Herrington. When the hearing took place, Tamera did not have counsel and was living with the Herringtons, who had retained counsel for the guardianship proceedings. A week or two following that hearing, the Herringtons forced Tamera to leave their home without allowing her to take S.H. Sixteen months later (June



2010), Tamera withdrew her consent and filed a petition to terminate the guardianship. The Herringtons objected to termination, and the proceedings have been ongoing since.

The circuit court first held a hearing on Tamera's petition in April 2011. We recounted the testimony from that hearing in our first opinion. *See In re Guardianship of S.H.*, 2012 Ark. 245, 409 S.W.3d 307 (*In re Guardianship of S.H. (I))*. There, Tamera testified that she had consented to the guardianship in 2008 because her life was unstable, but was now, at the time of the hearing, ready to regain custody of S.H. Following the hearing, the circuit court ruled that Tamera failed to meet her burden that the guardianship was no longer necessary and her burden that termination of the guardianship was in S.H.'s best interest. As a result, the court denied Tamera's petition to terminate the guardianship.

Tamera appealed to our court. We ruled that the guardianship statute, as applied to Tamera, was an unconstitutional violation of her fundamental liberty interest with respect to the care, custody, and control of her child. *In re Guardianship of S.H. (I)*, 2012 Ark. 245, at 15, 409 S.W.3d at 316. We reversed and remanded the case to the circuit court to consider the case in light of the following holding:

> A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child's best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.

*Id.*



SLIP OPINION

## II.     *Hearing on Remand*

After remand, the circuit court held three separate hearings over the space of ten months. The first hearing took place in October 2012. There, Tamera testified that she still lived in Minnesota and had moved in with her mother. The two of them shared a four-bedroom house, which her mother owned; her mother lived upstairs, and Tamera lived downstairs. Since the first hearing in 2011, Tamera had given birth to another child. Tamera was not married to the child's father. Rather, she testified that she had been in a nearly nine-month relationship with another man, Jeff Dawson. Tamera admitted that she often spent the night with Dawson, who had a ten-year-old daughter, and that S.H. had accompanied her on at least one of her overnight visits to Dawson's house.

Tamera further testified that she had quit her job as a nursing aide and started taking online nursing classes to be a medical assistant in order to eventually obtain a better job and this allowed her to spend time at home with her new baby. She also earned income babysitting her nephew. She testified that she does not use drugs or alcohol and had exercised all her visitation with S.H. since the last hearing. Other character witnesses testified on Tamera's behalf, including Jeff Dawson, Tamera's sister, and Tamera's uncle. All three testified that Tamera was a capable parent.

Donna Herrington testified as well. She said that her son, Scott, was currently at a drug-rehabilitation program in Iowa. Donna thought Tamera neglected S.H. by not being more involved when S.H. was in Arkansas, even though Donna had no evidence that Tamera neglected S.H. during S.H.'s visits to Minnesota. After considering the evidence, the court initially ruled that Tamera "has gone forward with evidence that the



guardianship is no longer necessary." The court then allowed the Herringtons to present evidence rebutting the presumption that terminating the guardianship was in S.H.'s best interest.

First, some of S.H.'s teachers testified that S.H. was a good student and appeared well-adjusted in their classrooms. Then Larry Herrington testified that S.H. takes dancing classes, that he and his wife provide S.H. with school supplies, attend parent–teacher conferences, and provide S.H. with all necessary material needs. Once Larry's testimony ended, the court recessed and continued the case until June 2013.

The only person to testify at the second hearing in June 2013 was a social worker, Lesa Doan.[1] Doan testified that she started treating S.H. in 2010 and had met with S.H. every two weeks. Doan had also incorporated Tamera into her sessions with S.H. pursuant to the circuit court's order. Between April 2011 and September 2012, Doan met with Tamera via Skype on five occasions, but she also testified that Tamera missed six other scheduled Skype sessions. Doan testified that Tamera would not notify her if she was going to miss one of the sessions. Doan's ultimate opinion was that S.H. should continue to stay with the Herringtons; if S.H. lived with her mother, Doan opined, it would "adversely affect" S.H.

The third hearing on remand took place in August 2013. The only person to testify was the attorney ad litem, who also issued a report. Like the social worker, he recommended that the guardianship remain in place and that S.H. continue to stay with her grandparents.

---

[1] Doan had also testified during the April 2011 hearing.



After the hearing the court issued a letter opinion. Contrary to its earlier ruling when Tamera had rested her case, the court held that Tamera had not put forth sufficient evidence to show that the guardianship was no longer necessary. Even so, the court made an alternative ruling that the Herringtons had rebutted the presumption that termination of the guardianship was in S.H.'s best interest.

### III.    *Standard of Review*

We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Id*.

### IV.    *Burden Going Forward*

When we decided this appeal the first time, we held that Tamera's initial burden was to "put forth evidence that the guardianship is no longer necessary." *In re Guardianship of S.H. (I)*, 2012 Ark. 245, at 15, 409 S.W.3d at 316 We did not specify whether this was a "burden of going forward or . . . a burden of proof." *Id*. at 22, 409 S.W.3d at 320 (Goodson, J., dissenting). We take the opportunity now to clarify the burden. A fit parent who consented to a guardianship puts forth sufficient evidence, and meets the burden going forward, by revoking consent and informing the court that the conditions necessitating the guardianship no longer exist. This is because a fit parent is presumed to act in his or her child's best interest. *Troxel v. Granville*, 530 U.S. 57 (2000); *Linder v.*

5



*Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002). Requiring any more from a fit parent would violate that parent's constitutional right to make decisions concerning the care, custody, and control of that parent's children. Thus, a fit parent is presumed to act in the child's best interest when consenting to the guardianship and, later, when terminating the guardianship.

The circuit court erred when ruling on Tamera's initial burden going forward. Again, the court initially ruled that Tamera had "gone forward with evidence that the guardianship is no longer necessary." The court then allowed the Herringtons to rebut the presumption that termination of the guardianship was in S.H.'s best interest. However, the court's letter opinion stated the opposite by finding "that Tamera did not put forth evidence sufficient to satisfy the court that the conditions necessitating the guardianship have been removed." So the court allowed Tamera to proceed through the remainder of the October 2012 hearing and two more subsequent hearings without alerting her that the court had changed its mind about whether she had truly met her burden. While this reverse finding raises concerns, we focus instead on the court's written order, which clearly misapplies the law. "To the extent that the court's bench ruling conflicts with its written order, if at all, the written order controls over the court's oral ruling." *Stills v. Stills*, 2010 Ark. 132, at 12, 361 S.W.3d 823, 830.

Specifically, the court's order stated that "after comparing the circumstances which existed at the time the guardianship was granted and the circumstances which exist now, the court concludes that there has not been any material change." This ruling was clearly erroneous: by bringing a petition to terminate a guardianship to which she had consented,



Tamera did not have the burden to show a material change in circumstances. "A change-of-custody analysis using the material-change-of-circumstances standard should not be done in termination-of-guardianship cases." *Graham v. Matheny*, 2009 Ark. 481, at 15, 346 S.W.3d at 281. The court erred by converting a termination-of-guardianship case into a change-of-custody case, which is the incorrect analysis. In a termination-of-guardianship case, a parent's only burden is to put forth evidence that the guardianship is no longer necessary. Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2012); *In re Guardianship of S.H.(I)*, *supra*.

Therefore, in this case, the circuit court erred when it ruled that Tamera failed to meet her burden going forward. This "burden" is neither an affirmative burden of proof nor a burden to prove a "material" change. Here, Tamera consented to the guardianship in August 2008. There has never been a finding that she was unfit. (Indeed, the psychologist testified at the April 2011 hearing that Tamera was a fit parent.) When Tamera withdrew her consent in her June 2010 petition to terminate the guardianship and testified that the conditions necessitating the guardianship no longer existed, she met her burden going forward that the guardianship was no longer necessary.

V.    *Best Interest*

The circuit court made an alternative ruling: even if Tamera met her initial burden, the Herringtons rebutted the presumption that terminating the guardianship was in S.H.'s best interest. This ruling was clearly erroneous. The circuit court failed to credit Tamera's fundamental right to care for her daughter and gave no weight to her rights as the natural parent. We explained in our last opinion that the court must give Tamera's status as a



parent some consideration. *In re Guardianship of S.H.*, 2012 Ark. 245, at 14, 409 S.W.3d at 316. To appropriately protect Tamera's rights as a fit, natural parent, the circuit court should have held the guardians to a clear-and-convincing standard of proof.

"On de novo review of a fully developed record, when we can plainly see whether the equities lie, we may enter the order that the circuit court should have entered." *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, at 9, 431 S.W.3d 303, 308. This is a probate matter where a fit mother consented to guardianship and has been attempting to regain custody since June of 2010. While we agree with the dissent's position—that when possible remand is the preferred option—this case involves a young child who has been held in limbo by our court system for the last five years. There is a reason this court conducts a de novo review of the record: there are cases, like this one, where it becomes necessary for us to consider the evidence and apply the appropriate standard. We do so in this case and hold that the Herringtons failed to rebut the presumption, by clear and convincing evidence, that termination of the guardianship was in S.H.'s best interest.

It should be noted at the outset that our previous opinion did not state whether the Herringtons' burden was by a preponderance of the evidence or clear and convincing evidence. We thus failed to provide the circuit court with direction on this issue. But we cannot compound that problem by refusing to set it out clearly now. Different states have taken different approaches to the burden the guardian carries when a fit parent brings a petition to terminate the guardianship. *Compare In re D.I.S.*, 249 P.3d 775, 786 (Colo. 2011) (preponderance of the evidence) *with In re Guardianship of Reena D.*, 35 A.3d 509, 515 (N.H. 2011) (clear and convincing evidence). And in another context, Arkansas



requires clear and convincing proof of a child's best interest in a termination-of-parental-rights case. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013).

The Nebraska Supreme Court has explained the purpose of consensual guardianships and why a clear-and-convincing standard of proof is necessary to protect a natural parent's constitutional rights:

> [G]uardianships are intended to encourage parents experiencing difficulties to temporarily turn over the custody and care of their children—safe in the knowledge that they will be able to regain custody in the future. This policy would be frustrated if guardianships were permanent or resulted in the automatic termination of parental rights, because parents would be less likely to voluntarily petition for a guardian to be appointed to care for their minor children. Therefore, children would unnecessarily be placed in jeopardy in many circumstances.
>
> . . . .
>
> Thus, we hold that in guardianship termination proceedings involving a biological or adoptive parent, the parental preference principle serves to establish a rebuttable presumption that the best interests of the child are served by reuniting the minor child with his or her parent. In other words, an individual who opposes the termination of a guardianship bears the burden of proving by clear and convincing evidence that the biological or adoptive parent either is unfit or has forfeited his or her right to custody. Absent such proof, the constitutional dimensions of the relationship between parent and child require termination of the guardianship and reunification with the parent.

*In re Guardianship of D.J.*, 682 N.W.2d 238, 246 (Neb. 2004); *see also In re Guardianship of Reena D.*, 35 A.3d at 515 (holding that a clear-and-convincing standard of proof applies to the guardian's burden in a proceeding to terminate a guardianship established by consent); *Boddie v. Daniels*, 702 S.E.2d 172, 175 (Ga. 2010) (requiring guardian to prove by clear and convincing evidence that terminating the guardianship would harm the child); *Tourison v. Pepper*, 51 A.3d 470, 474 (Del. 2012) (same).


We agree with those states that require the guardians to meet a clear-and-convincing burden of proof. To hold otherwise would place the natural parents and guardians on an equal plane, making a termination-of-guardianship case just like a court's initial custody decision in a divorce case or in a child-custody modification. In custody cases, the court weighs best-interest against placing the child with two biological parents.[2] Ark. Code Ann. § 9-13-101(a)(1)(A)(i) (Supp. 2013) ("In an action for divorce, the award of custody of a child of the marriage shall be made without regard to the sex of a parent but solely in accordance with the welfare and best interest of the child.").

But in guardianships, the decision is generally between a natural parent and a non-natural parent. *See, e.g.*, *Graham*, *supra* (biological mother vs. paternal grandmother); *Smith v. Thomas*, 373 Ark. 427, 284 S.W.3d 476 (2008) (biological father vs. maternal grandparents); *Crenshaw v. Crenshaw*, 2012 Ark. App. 695 (biological mother vs. paternal grandparents). Fit, natural parents who consent to a guardianship need additional protection in seeking to terminate the guardianship. A preponderance-of-the-evidence standard would fail to safeguard a natural parent's fundamental right to parent his or her children. The circuit court cannot simply weigh best-interest equally between the natural parent and the non-natural parent. Some additional weight must be given to the natural parent's fundamental rights, which a clear and convincing standard can provide.

In this case, the court made only the following findings as to how the Herringtons rebutted the presumption that termination of the guardianship was in S.H.'s best interest:

[2]Some exceptions obviously apply for purposes of visitation. Ark. Code Ann. § 9-13-103 (Repl. 2009) (grandparent visitation); Ark. Code Ann. § 9-13-102 (sibling visitation); *Robinson v. Ford-Robinson*, 362 Ark. 232, 208 S.W.3d 140 (2005) (stepparent visitation).



Since their appointment as guardians, the Herringtons have provided, and continue to provide, a stable, loving and supportive home, providing for both her physical and emotional needs. Although the Herringtons continue to maintain counseling for S.H., all things considered, the evidence indicates that S.H. is a well-adjusted child. She is in the third grade where she is an exceptional student. She is also involved in extracurricular activities, and has a number of friends with whom she spends time. The Herringtons and S.H. have developed a strong bond.

The above fails to clearly and convincingly rebut the presumption that terminating the guardianship was in S.H.'s best interest. By the time the court issued this letter opinion, S.H. had been in the Herringtons' custody for nearly five years (October 2008–September 2013). No one disputed that the Herringtons were loving grandparents and took great care of S.H., and, one would expect, a child will have bonded with loving grandparents over a five-year period. But this is not a fact or piece of evidence that will, in itself, rise to clear and convincing evidence that the child should remain with the guardians.

What's more, only sixteen months after the guardianship was entered, Tamera filed a petition to terminate and has spent the subsequent five years trying to regain custody of her daughter. Many of the delays in this case have resulted result not from Tamera's indifference to her child but from the natural unfolding of the legal process.[3] The longer the case goes on, the stronger the bond between the Herringtons and S.H. will be, and Tamera has not been the cause of extending the case five years. Nothing Tamera can do will rebut this or surmount this. So to hold that the bond between S.H. and her guardians—in itself—trumps Tamera's right to care for her child would effectively annihilate her fundamental right to be a parent. We have acknowledged that "the stability of a child's environment and how well the child is functioning become critical factors, in

---

[3]The April 2011 hearing was delayed twice upon the Herringtons' request, and there was a further delay because the ad litem failed to appear at the hearings.



addition to other factors, in deciding the child's best interest." *Graham*, 2009 Ark. 481, at 15, 346 S.W.3d at 281. Obviously S.H.'s stability and proper functioning are still critical factors; however, they are factors that must contend with Tamera's fundamental right to make decisions regarding S.H.'s custody.

This does not mean that Tamera's actions since she consented to the guardianship are irrelevant. But the evidence generally showed that Tamera, while not an ideal parent, remained a fit parent, which is all that matters for constitutional purposes. No evidence was shown that Tamera could not also provide the love and affection that the grandparents did. Even the social worker testified as to the affection between Tamera and S.H. Moreover, Tamera was going to nursing school, had family support in Minnesota, and has spent nearly five years attempting to regain custody of her daughter.

Although the court was silent about the weight it gave the testimony from the social worker and the ad litem, both recommended that the guardianship remain in place. Tamera argues that the ad litem's testimony should be discounted because he failed to comply with an Administrative Order.[4] She further argues that the circuit court should have excluded, under *Daubert*, parts of Doan's testimony that were based on art therapy and play therapy.

We acknowledge these concerns, but they play no part in our decision for two reasons. First, the court did not explicitly base its best-interest decision on Doan's therapy interpretations or on the ad litem's recommendation. So even if there is a *Daubert* violation or a failure to comply with an administrative order, no prejudice exists. "On

---

[4]"An attorney ad litem shall appear at all hearings to represent the best interest of the child." Ark. Sup. Ct. Admin. Order No. 15.1(5)(c) (2014).



appeal, we will not reverse a trial court's ruling on the admission of evidence absent an abuse of that discretion nor will we reverse absent a showing of prejudice." *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 645, 42 S.W.3d 508, 521 (2001). Second, these two arguments really go to the weight and credibility of the testimony from the ad litem and social worker. These matters rest with the circuit court. And so, on appeal, we follow the circuit court's lead and leave undisturbed its decision to give little weight to these testimonies. The court's letter opinion reflected that the court based its best-interest decision solely on the bond S.H. had formed with the Herringtons, which, as stated above, cannot rebut the presumption by clear and convincing evidence that the guardianship should be terminated.

Therefore, we reverse the court's order and remand for the circuit court to enter an order returning S.H. to Tamera's custody and terminating the Herringtons' guardianship. Tamera's second point on appeal is that the circuit court erred by requiring her to continue to participate in S.H.'s counseling with Lesa Doan. This issue is now moot because we are reversing the court's order, and S.H. will be returned to her mother's custody.

## VI.    *Law of the Case*

The law of the case doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review. *Clinical Study Ctrs., Inc. v. Boellner*, 2012 Ark. 266, 411 S.W.3d 695. The doctrine of law of the case prohibits a court from reconsidering issues of law and fact that have already been decided in a prior appeal. *Id*. The doctrine requires us to



adhere to our decision on the first appeal even though we might think it to have been wrong. *Potter v. Easley*, 288 Ark. 133, 703 S.W.2d 442 (1986).

Thus, under law of the case, we must adhere to the two-step, burden-shifting procedure from *In re Guardianship of S.H. (I)*, which we summarize as follows. A fit parent who consented to a guardianship puts forth sufficient evidence to terminate the guardianship, and meets the burden going forward, by revoking consent and informing the court that the conditions necessitating the guardianship no longer exist. If the guardians desire the guardianship to stay in place, they must rebut the presumption, by clear and convincing evidence, that termination of the guardianship is in the child's best interest. The circuit court must always consider the natural parent's right to parent his or her child in that decision.

This two-step process has been derived from *In re Guardianship of S.H. (I)* and *Graham*. We acknowledge it is not entirely consistent with the guardianship statutes, which provide that a court may terminate a guardianship "if, for any other reason, the guardianship is no longer necessary or for the best interest of the ward." Ark. Code Ann. § 28-65-401(b)(3). This statute is disjunctive, which ostensibly means a guardianship can be terminated for either of the above reasons. However, in *Graham*, this court held that even if the guardianship is no longer necessary, "[w]hat is in the best interest of the child must always be examined under the first standard to determine whether the guardianship should be terminated." 2009 Ark. 481, at 14, 346 S.W.3d at 281. So the *Graham* court converted a disjunctive statute into a conjunctive statute. *See id*. at 19, 346 S.W.3d at 285 (Hannah, C.J., dissenting) ("[N]either this court nor the court of appeals has applied the proper

SLIP OPINION

standard on termination of a guardianship set out in the statute."). The constraints of the law of the case prevent this court from following the cardinal rule of statutory interpretation, which is "to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language." *McMillan v. Live Nation Entm't, Inc.*, 2012 Ark. 166, at 4, 401 S.W.3d 473, 476.

Reversed and remanded.

BAKER and HART, JJ., concur.

HANNAH, C.J., and DANIELSON, J., dissent.

**KAREN R. BAKER, Justice, concurring.** I agree with the majority that this case must be reversed. However, because the majority employs a different analysis than I would, I concur.

This appeal stems from the Arkansas County Circuit Court's November 24, 2008 appointment of Donna and Larry Herrington, appellees, as guardians of S.H., their minor granddaughter. Tamera Troesken, appellant, is S.H.'s mother. Tamera initially consented to the appointment of guardianship, but on June 25, 2010 filed a petition to terminate the guardianship. On June 13, 2011, the circuit court denied Tamera's petition. Tamera appealed and in *In re Guardianship of S.H.*, 2012 Ark. 245, 15, 409 S.W.3d 307, 316, we reversed the circuit court holding:

> The application of Ark. Code Ann. § 28-65-401 in this instance violated Tamera's constitutional right. A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child's best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the

guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.

We remanded the case for the circuit court "to address Tamera's petition in light of our holding." Contrary to the position of the dissent, our holding in *In Re S.H. I* was not an invitation for the circuit court to reopen the proceedings and conduct additional hearings over an extended period of time. In *Standridge v. Standridge*, 304 Ark. 364, 368, 803 S.W.2d 496, 498(1991), we explained:

Whatever was before this court, and is disposed of, is considered as finally settled. The inferior court is bound by the judgment or decree as the law of the case, and must carry it into execution according to the mandate. The inferior court cannot vary it for any other purpose than execution. It can give no other or further relief as to any matter decided by the Supreme Court, even where there is error apparent; or in any manner intermeddle with it further than to execute the mandate, and settle such matters as have been remanded, not adjudicated, by the Supreme Court. We have consistently followed that rule. *See Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979); *Milsap v. Holland*, 186 Ark. 895, 56 S.W.2d 578 (1933).

*Id.*, citing *Fortenberry v. Frazier*, 5 Ark. 200 (1843).

In this case, the circuit court should have reconsidered its order and applied the correct constitutional standard to the case before it as directed in *In Re S.H. I.* However, upon remand, the parties returned to circuit court where the circuit court held three additional hearings: October 23, 2012, June 28, 2013, August 2, 2013.

On September 23, 2013, the circuit court ultimately denied Tamera's petition to terminate the guardianship. On October 3, 2013, Tamera filed a motion for amendment of findings, for reconsideration, and/or for new trial. On November 1, 2013, the circuit court held another hearing and on November 4, 2013 denied the motion. From those orders, Tamera appeals.

SLIP OPINION

We review probate proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See Thomas v. Avant*, 370 Ark. 377, 260 S.W.3d 266 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *See Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007). When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses.[1]

In its September 23, 2013 order, denying her petition, the circuit court held:

> After comparing the circumstances which existed at time the guardianship was granted and the circumstances which exist now, the court concludes that there has not been any material change. While the details may have changed in some respects, the conditions still indicate an unstable situation. The court therefore finds that Tamera did not put forth evidence sufficient to satisfy the court that the conditions necessitating the guardianship have been removed. Even if Tamera had put forth satisfactory evidence that the conditions necessitating the guardianship had been removed, and considering the parental preference in Tamera's favor, the court finds based on the evidence that the Herringtons have rebutted the presumption that termination of the guardianship is in S. H.'s best interest.

With regard to guardianship, we have held that "Arkansas courts have long referred to guardianship cases as special proceedings. *See, e.g., Nelson v. Cowling*, 89 Ark. 334, 116 S.W. 890 (1909). Further, special proceedings are governed by statute. *First Security Bank v. Estate of Leonard*, 369 Ark. 213, 253 S.W.3d 434 (2007); *In re Adoption of Baby Boy*

---

[1] However, contrary to the dissent's position, as an appellate court, we must review the probate court's findings. The probate court's findings are not insulated from review, but rather are afforded due deference upon review. Without elaboration, the dissent only states that it "simply cannot say that the circuit court clearly erred in its decision, based on my review of the record and the circuit court's findings under our standard of review."

SLIP OPINION

*Martindale*, 327 Ark. 685, 940 S.W.2d 491 (1997). *Hetman v. Schwade*, 2009 Ark. 302, at 9, 317 S.W.3d 559, 563." *Swenson v. Kane*, 2014 Ark. 444, 447 S.W.3d 118. Guardianships are creatures of statute and exist only as defined by the statutes of the Probate Code. Likewise, guardianships are terminated as provided by statute. *Id.* The statute at issue, Ark. Code Ann. § 28-65-401, addresses the termination of guardianship and provides in pertinent part:

> (b) A guardianship may be terminated by court order after such notice as the court may require:
>
> . . . .
>
> > (3) If, for any other reason, the guardianship is no longer necessary or for the best interest of the ward.

In interpreting this statute, we have held that fit parents do not relinquish their fundamental liberty interest in raising their children by consenting to a guardianship and are entitled to the *Troxel v. Granville,* 530 U. S. 57 (2000) presumption in a proceeding to terminate that guardianship:

> A natural parent who has not been deemed unfit is entitled to the presumption that he or she is acting in the child's best interest, even after consenting to a guardianship. Therefore, when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent must put forth evidence that the guardianship is no longer necessary. Once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.

*In Re S.H. I*, 409 S.W.3d at 316-17.

Further, in our discussion regarding *Troxell* and a parent's rights to establish and terminate a guardianship, we cited with approval the Colorado Supreme Court's analysis:

18



An important characteristic of a guardianship by parental consent is that parents have exercised their fundamental right to place their child in the custody of another for purposes of furthering the child's best interests. Failure to accord fit parents a presumption in favor of their decision to terminate a guardianship established by parental consent would penalize their initial decision to establish the guardianship and deter parents from invoking the guardianship laws as a means to care for the child while they address significant problems that could impair the parent-child relationship or the child's development. *In re D.I.S.*, 249 P.3d at 783 (internal citations omitted); *see also In re Guardianship of D.J.*, 682 N.W.2d at 246; *In re Guardianship of Reena D.*, 35 A.3d at 513–14.

In *Devine v. Martens*, we expressed similar public-policy concerns.  371 Ark. 60, 74, 263 S.W.3d 515, 526 (2007) ("Just as the Arkansas Juvenile Code recognizes the efforts of parents in dependency-neglect actions to improve their homes and parenting skills, we should encourage and recognize such improvements by parents in guardianship actions.").

*In Re S.H. I*, 409 S.W.3d at 315-16.

Accordingly, in *In Re S.H. I*, we ultimately set out the standard for the termination of a guardianship: (1) The parent must put forth evidence that the guardianship is no longer necessary and (2) once the court is satisfied that the conditions necessitating the guardianship have been removed, the guardians shoulder the burden of rebutting the presumption that termination is in the child's best interest.

In reviewing whether this standard for termination of guardianship was met here, we must determine, based on our standard of review, whether Tamera put forth evidence that the guardianship was no longer necessary.  The record clearly demonstrates that she did.  Tamera put forth evidence that the guardianship was no longer necessary, by revoking her consent to the guardianship.  This withdrawal of consent to the guardianship sufficiently demonstrated that the guardianship was no longer necessary.  A "fit parent," like Tamera, is presumed to act in S.H.'s best interest. Thus, Tamera is presumed to have acted in S.H.'s best interest when she consented to the guardianship, and she is, likewise,


presumed to have acted in S.H.'s best interest when she revoked her consent to the guardianship.

In the first hearing following our remand on Tamera's petition to terminate the guardianship, in ruling on the Herrington's motion to dismiss Tamera's petition the circuit court stated:

> The charge of the Supreme Court in this case on remand was that the petitioner must go forward with evidence that the guardianship is no longer necessary. I believe that the petitioner, Ms. Troesken, . . . has gone forward with evidence that the guardianship is no longer necessary. Without saying how strong that evidence is, I think the evidence has been submitted, so the motion will be denied.

Yet, in its written opinion, the circuit court held that Tamera had not put forth evidence that the guardianship was no longer necessary. In this ruling, the circuit court clearly erred.

Further, in finding that it was in not in S.H.'s best interest that the guardianship be terminated, the circuit court erred yet again. The Herringtons bore the burden of rebutting the presumption that termination was in S.H.'s best interest after Tamera had revoked her consent. However, the record demonstrates that although the circuit court's order recited that the Herrington's had rebutted the presumption that termination was in S.H.'s best interest; in truth, it is clear that the burden was placed on Tamera, the parent, to further show that termination was warranted.

Again, the statutory standard in Ark. Code Ann. § 28–65–401 to be applied in termination of guardianship cases provides for termination of a guardianship upon either of two grounds, (1) that the guardianship is no longer necessary, or (2) for the best interest of the ward.



In *In Re S.H. I*, we explained:

> The Arkansas General Assembly made clear that, in the case of original guardianship actions with respect to children, natural parents enjoy a preference in the law. Ark. Code Ann. § 28-65-204(a) (Repl. 2012). Once established, a guardianship may be terminated by court order after notice as required by the court where the guardianship is no longer necessary or for the best interest of the ward. Ark. Code Ann. § 28-65-401(b)(3); *see also Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273 (clarifying the standard for courts in guardianship-termination proceedings).

*In Re S.H. I,* 409 S.W.3d at 312–13.

In *Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273 we held:

> [T]hat analyzing [a] case under the change-of-circumstances standard as if the case were a child-custody matter is the wrong analysis to be performed by the circuit judge in [a] termination case and that the proper analysis should be done under the standard set out in section 28-65-401(b)(3).

*Id.*, 346 S.W.3d at 281.

However, although clarifying the standard for termination of guardianship cases, the analysis in *Matheny* is being wrongly interpreted by the majority to indicate that the best interest of the ward is properly a part of the court's consideration in determining whether a guardianship continues to be necessary. That is not the case. Instead, as was correctly noted in *Matheny*, the two bases upon which a guardianship may be terminated are in the disjunctive:

> [I]t is clear to this court that the standard to be applied in termination-of-guardianship cases has been fixed by the General Assembly in section 28-65-401(b)(3), and that standard is (1) whether the guardianship is no longer necessary, or (2) whether termination is in the best interest of the ward. The statutory standard is crafted in the disjunctive and is applicable to terminations involving wards who are adults and wards who are children.

*Id.*, 346 S.W.3d at 281.



Thus, a guardianship may be terminated when it is no longer necessary. Additionally, a guardianship may be terminated when termination is in the ward's best interest.

The testimony at the hearings on remand all demonstrate that Tamera and the guardians have an acrimonious relationship at best. At the time of the hearing, Tamera had had another child with a man to whom she was not married and was presently involved in a approximately nine-month long relationship with a different man. Tamera is unemployed, attends school on-line, stays at home with her infant daughter, resides with her mother and is financially supported by various family members. However, there has never been a finding that Tamera is an unfit parent and the record in this case cannot support such a finding. Thus, as a fit parent, Tamera is presumed to have acted in S.H.'s best interest in revoking her consent to the guardianship. Therefore, Tamera demonstrated that the guardianship is no longer necessary and should be terminated.

At that point, pursuant to our holding in *In Re S.H. I.*, in order to rebut the presumption, the Herrington's were required to shoulder the burden of proving that termination was not in S.H.'s best interest by showing that Tamera was an unfit parent and unsuitable to have custody of S.H. They failed to do so. Therefore, the circuit court erred in denying Tamera's petition to terminate the guardianship.

Finally, I must note the disturbing tendency in our precedents to conflate guardianships with custody cases. Guardianships are creatures of statute that are created by the Probate Code. They are governed wholly by statute and established by order of the probate court. Probate courts are courts of law, not equity. This inexcusable mingling of

22



equitable principles is apparent in this court's opinion in *Fletcher v. Scorza*, 2010 Ark. 64,

359 S.W.3d 413 (2010), where we said:

> It is within the circuit court's discretion to make a determination as to whether a parent is qualified and suitable. *See Freeman v. Rushton*, 360 Ark. 445, 202 S.W.3d 485 (2005). Moreover, the natural–parent preference is but one factor that the circuit court must consider in determining who will be the most suitable guardian for the child. *See Blunt* [*v. Cartwnght*, 342 Ark. 62, 30 S W 3d 737 (2000)],. . . . *Any inclination to appoint a parent or relative must be subservient to the principle that the child's interest is of paramount consideration. See Blunt, supra.*

*Id.*, 359 S.W.3d at 421(emphasis added).

Of course, the case of *Blunt*, predated the Supreme Court's holding in *Troxell*, and

*Freeman v. Rushton*, 360 Ark. 445, 202 S.W.3d 485 (2005) failed to even mention *Troxell*

in holding that the inclination to appoint a parent or relative must be subservient to the

child's best interest and that the child's best interest is of paramount consideration, both in

custody and in guardianship situations.[2] However, *Troxell* held that:

> . . . *the Fourteenth Amendment's Due Process Clause has a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests," Washington v. Glucksberg, 521 U. S. 702, 720, including parents' fundamental right to make decisions concerning the care, custody, and control of their*

---

[2]This language, referring to "the child's best interest" seems to be at the root of the confusion surrounding the proper standard to be applied in guardianship cases. First, it is incorrect, because the statute references only "the ward's best interest." Second, it appears to be easily confused with the "best interest of the child" analysis used in domestic relations cases. Unfortunately, both *Graham* and *In Re S.H. I* use the term "best interest of the child." However, a careful reading of both of these cases shows that the intended meaning is that a guardianship is necessary where the parent is unfit, or where some other harm to the ward would result if the guardianship were terminated. Certainly, any particular guardianship may be terminated if termination is in the ward's best interest, even if guardianship is still necessary.

SLIP OPINION

*children*. There is a presumption that fit parents act in their children's best interests, *Parham v. J. R.*, 442 U. S. 584, 602; there is normally no reason for the State to inject itself into the private realm of the family to further question fit parents' ability to make the best decisions regarding their children. *see, e.g., Reno v. Flores, 507 U. S. 292, 304.*

*Id.*, 530 U. S. 57 at 65 (emphasis added).

Further, in *Linder v. Linder*, 348 Ark. 322, 72 S.W.3d 841 (2002), a grandparent visitation case, this court held that to overcome the presumption in a parent's favor, there must be some other factor, such as harm to the child or custodial unfitness, that justifies state interference. Likewise, to pass constitutional muster our guardianship statutes must recognize a parent's fundamental right to make decisions concerning the care, custody and control of their children and the presumption that a fit parent acts in their child's best interest. *See id*.

The *Fletcher* court then further compounded its error in failing to recognize a parent's fundamental rights, by referring to this court's case of *Freeman*, and stating:

> In *Freeman*, we rejected Freeman's argument that "the natural-parent preference must prevail unless it is established that the natural parent is unfit," observing that "[*Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988), relied on by *Freeman*,] is a modification-of-custody case, not a guardianship case, governed by the case-law preference, not the statutory preference found in Ark. Code Ann. § 28-65-204(a)." Id. at 451–52, 202 S.W.3d at 488. We, therefore, take this opportunity to clarify that the sole considerations in determining guardianship pursuant to Ark. Code Ann. § 28-65-204(a) are whether the natural parent is qualified and suitable and what is in the child's best interest. *To the extent that any of our prior cases suggest a standard of fitness or unfitness in guardianship proceedings involving the statutory natural-parent preference, we overrule them.*

*Fletcher*, 2010 Ark. 64, 359 S.W.3d 413 (emphasis added).



Of course, as stated previously, *Blunt* predates *Troxell*, and *Freeman* does not even mention the presumption in favor of a fit parent. But, as Justice Glaze pointed out in his dissent in *Freeman*:

> [T]he proper analysis must commence with the presumption that Freeman was acting in his son's best interest, however, Freeman was not given the benefit of that presumption: Our court, therefore, cannot be assured that, if it had utilized the correct legal principles and analysis the trial court would have ruled the way it did. . . . It appears to me that Freeman's argument that the trial court erred as a matter of law is correct under the tenets established in *Troxell* and *Linder*. In my view, confusion exists in this case and we are the only ones who can alleviate that confusion - better now than later.

*Freeman v. Rushton*, 360 Ark. at 452, 202 S.W.3d at 489, Glaze J., dissenting (emphasis added).

Justice Glaze was correct, and the confusion has only gotten worse as evidenced by this court's holding in *Fletcher*. However, *Blunt*, *Freeman*, and *Fletcher* all predate our holding in *In Re S.H. I* where we first recognized that Ark. Code Ann. § 28-65-401 is unconstitutional as applied to a fit parent. Earlier decisions are implicitly overruled by subsequent decisions to the contrary. *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1979).

While the dissent may, "shudder to think" that this court, "now having the vote" to basically overrule "without so stating" our holding in *In Re S.H. I*, this statement is as incorrect as it is inflammatory and hyperbolic. If this court were to conclude that the holding in *In Re S.H. I* misapplied the law, it is our duty to so hold. This is particularly true where, as here, we are dealing with a statutory infringement on a fundamental right that is subject to review under a strict scrutiny standard. *See Linder*. Therefore, the dissent should not "shudder to think" that this court will preform its duty and overrule any prior

25



precedent that is inconsistent with the constitutional guarantee of due process. However, despite the dissent's baseless characterization, the majority does no such thing. While I reach my conclusions from a different analysis than that employed by the majority, I do agree with their conclusion that the circuit court in this case impermissibly required Tamera to prove a change of circumstances in order to justify terminating the guardianship in direct violation of our holding in *In Re S.H. I.* For that reason alone, this case must be reversed.

As for the dissent's assertion that the proper course to take when the circuit court has committed error, in a case such as this, is to reverse and remand for *further proceedings*, I am, quite frankly, appalled. This is a probate case, a case at law, and we do not defer to the circuit court on matters of law; but, instead, review the case de novo on the record.[3] In this case, Tamera, a fit parent, has been struggling through five years of legal proceedings to regain custody of her child. That the dissent could possibly believe that further proceedings would benefit anyone, especially S.H., defies both logic and common sense. In this regard, I again quote Justice Glaze's wisdom from his dissent in *Freeman*,

---

[3]In this regard, both the majority and the dissent err in citing to *Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431 S.W.3d 303. *Ingle* was a juvenile case, sounding in equity, in which the circuit court maintained continuing jurisdiction. Thus, in *Ingle*, a new petition could be filed in the case encompassing circumstances that had arisen following the entry of the previous order, which we reversed. Yet, even in equity, the moving party must show a material change in circumstances has transpired since the time of the previous order. *See generally*, *Jones v. Jones*, 326 Ark. 481, 931 S.W.2d 767 (1996). In *In re S.H. I*, a probate case, there was no continuing jurisdiction. The order at issue in that case was the order denying Tamera's initial petition to terminate the guardianship. We reversed that order and remanded the case for the circuit court to reconsider its ruling and apply the correct constitutional standard.



"confusion exists in this case and we are the only ones who can alleviate that confusion – better now than later."

HART, J., joins.

**PAUL E. DANIELSON, Justice, dissenting.** Because I cannot abide by the majority's substitution of its judgment for that of the circuit court and because I do not agree that the circuit court clearly erred in denying Tamera's petition to terminate the guardianship, I respectfully dissent.

Our standard of review in these cases is longstanding and quite clear: we review probate proceedings de novo, *but* we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *See id.* When reviewing the proceedings, we give *due regard* to the opportunity and *superior position* of the probate judge to determine the credibility of the witnesses. *See id.* The majority's opinion, however, represents quite a sea change in the manner by which this court will now review a case such as this one. Instead of adhering to our standard of review, the majority opinion wholly ignores the circuit court's decision in this case and replaces it with its own—annihilating our role as an appellate court to *review*. By its doing so, I am left to wonder if there is any longer a need to allow the circuit court to even



consider these matters first.[1]  At the very least, I am troubled by the precedent being set by the majority's actions.

In addition, I believe that the majority opinion has removed any discretion by the circuit court in deciding a petition to terminate guardianship.  Ark. Code Ann. § 28-65-401(b)(3) (Repl. 2012) (providing that a "guardianship *may* be terminated by court order after such notice as the court may require . . . [i]f, for any other reason, the guardianship is no longer necessary or for the best interest of the ward").  While stating its recognition of this court's precedent in the first appeal in this matter, the majority basically overrules that decision, without so stating, and holds that merely "informing the court that the conditions necessitating the guardianship no longer exist" is all that is required.  That, in my opinion, flies in the face of our earlier decision, wherein we specifically held that "when a natural parent, who has not been deemed unfit and who has consented to a guardianship, files a petition to terminate that guardianship, that parent *must put forth evidence that the guardianship is no longer necessary*."  *In re Guardianship of S.H.*, 2012 Ark. 245, at 15, 409 S.W.3d 307, 316 (*S.H. (I)*) (emphasis added).

Here, the circuit court held Tamera to the showing required in *S.H. (I)* and concluded in its letter opinion that the "conditions still indicate an unstable situation."[2]

---

[1]In its attempt to justify the substitution of its judgment for that of the circuit court, the majority states that it can do so because the circuit court applied an incorrect standard and because the matter has been pending for several years.  Even if the circuit court applied an incorrect standard, which I in no way concede that it did, the proper remedy would be a reversal of the circuit court's decision and a remand for *the circuit court* to apply the correct standard.  *See Graham*, 2009 Ark. 481, 346 S.W.3d 273.  More importantly, it is not, and has never been, this court's function, no matter the circumstances, to ever "consider the evidence and apply the appropriate standard," as asserted by the majority. To do so under the guise of de novo review is simply wrong.

SLIP OPINION

Despite the fact that the circuit court did precisely as this court instructed in *S.H. (I)*, the majority nonetheless reverses the circuit court's decision. I shudder to think that the majority's reversal is nothing more than the result of the dissent in *S.H. (I)* now having a majority to reverse our prior holding. But whatever the majority's rationale, I simply cannot say that the circuit court clearly erred in its decision, based on my review of the record and the circuit court's findings under our standard of review. For this reason, I would affirm the circuit court's denial of Tamera's petition.

While not necessary to its decision, the circuit court did go further and concluded that even if Tamera had put forth evidence that the conditions necessitating the guardianship had been removed, the Herringtons had rebutted the presumption that termination of the guardianship was in S.H.'s best interest. The majority concludes that this decision was erroneous as well because the circuit court "failed to credit Tamera's fundamental right to care for her daughter and gave no weight to her rights as the natural parent." In *S.H. (I)*, we held that a parent, who has not been found unfit and who consented to a guardianship, is entitled to the presumption that she or he is acting in the child's best interest in a proceeding to terminate that guardianship. *See S.H. (I)*, 2012 Ark. 245, 409 S.W.3d 307.

The majority's observation, however, indicates a flawed understanding of our further holding in *S.H. (I)*—that a natural parent's fundamental right to the care, custody, and control of her or his child is recognized and afforded weight by virtue of the

---

[2]The circuit court incorporated its letter opinion into its order denying Tamera's petition.



rebuttable presumption given that parent that termination of the guardianship is in the child's best interest. *See id.* The fact that a presumption is afforded to that parent *is* itself the recognition and protection of the parent's fundamental right to parent. *See Black's Law Dictionary* 1378 (10th ed. 2014) (defining "rebuttable presumption" as "[a]n inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence"). When the circuit court in the instant case gave Tamera the benefit of the presumption and required the Herringtons to rebut it, the circuit court gave the requisite weight to Tamera's fundamental right and protected it, just as we held in *S.H. (I)*.

On a final note, I would be remiss if I did not point out the danger in the majority's directive to the circuit court to return S.H. to Tamera's custody, when it does not have the benefit of knowing the events and circumstances since the filing of this appeal. *See Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 53, 431 S.W.3d 303 (Danielson, J., concurring in part and dissenting in part). It was a dangerous precedent in *Ingle*, from which I vigorously dissented, and I remain steadfast in my position, most certainly after my very fears were confirmed in that case. *See Ingle v. Ark. Dep't of Human Servs.*, 2014 Ark. 471, 449 S.W.3d 283. As I have already noted, even if the circuit court had erred, the proper remedy would be a reversal of the circuit court's decision and a remand to the circuit court for further proceedings. *See Graham*, 2009 Ark. 481, 346 S.W.3d 273.

Because the majority's opinion and its actions therein far exceed our role as a court of appellate review, and because, after having exercised the appropriate review in such

SLIP OPINION

cases, I would affirm the circuit court's order denying Tamera's petition to terminate the guardianship, I respectfully dissent.

HANNAH, C.J., joins.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Boyd & Buie*, by: *Christina Boyd* and *Rufus T. Buie, III*, for appellees.